OPINION
Defendant-appellant, Ransom B. Staley, appeals his conviction in the Madison County Court of Common Pleas for escape in violation of R.C. 2921.34. We affirm the decision of the trial court.
On April 7, 1986, appellant pled guilty to felonious assault with a firearm specification. The trial court subsequently sentenced appellant to an indeterminate prison term of seven to fifteen years for the felonious assault conviction with a consecutive three-year term of incarceration for the firearm specification.
On November 20, 1998, the Ohio Department of Rehabilitation and Correction placed appellant at the Madison Correctional Institution ("Madison Correctional"). During appellant's incarceration at Madison Correctional, he participated in vocational employment through Ohio Penal Industries ("OPI"). OPI provides training opportunities for inmates in various trades as part of the rehabilitation process. At Madison Correctional, OPI has two shops that make modular office furniture and refurbish file cabinets. In addition, there are crews that remove asbestos and underground storage tanks across the state of Ohio. Inmates participating in OPI programs at Madison Correctional are at all times under detention, even while working on projects located outside of the institution.
On the morning of January 5, 1999, OPI Supervisor, Michael Kvarness, selected appellant as a crewmember for an asbestos removal project. Appellant and three other inmates left the confines of Madison Correctional in a van and proceeded to the OPI warehouse located adjacent to the prison. When they reached the warehouse, Kvarness unlocked the padlock securing a walk-through door and opened a large roll-up garage door so that he could drive the van into the warehouse. Once the van was inside the warehouse, Kvarness closed the garage door, but the walkthrough door remained unlocked since it had to be locked from the outside with the padlock. Kvarness took the crew to the back of the warehouse and directed them to load the van with certain supplies necessary for asbestos removal.
Approximately thirty minutes after arriving at the warehouse, Kvarness realized that appellant was missing. Kvarness searched the warehouse and was unable to locate appellant. Instead, Kvarness found appellant's blue prison shirt bearing his identification number and his identification badge on a table in a small office. In addition, Kvarness found on the table other articles of clothing that he recognized as having been worn by appellant that morning: a hooded sweatshirt, jacket, baseball cap and white gloves. Believing that appellant exited through the walk-through door, Kvarness radioed Madison Correctional and reported appellant as missing. Efforts to locate appellant locally were unsuccessful.
On February 1, 1999 around 6:45 a.m., Nevada State Police Troopers Bruce Roper and E. Kemmer were on routine patrol twenty miles south of Las Vegas at the intersections of State Route 161 and Interstate 15 when they noticed two semi tractor trailers and a Plymouth Sundance parked in a lot off of the highway. Numerous "No Parking" signs flanked the lot. The troopers cited the drivers of the two tractor-trailers and then proceeded in their vehicle toward the Plymouth.
The troopers noticed two passengers in the vehicle: a male in the driver's seat and a female in the passenger's seat. As the troopers approached the Plymouth, the passengers awakened, started the car and began to drive off the lot. Trooper Kemmer activated the emergency lights of the patrol car and the Plymouth stopped. Trooper Kemmer positioned the patrol car behind the Plymouth.
Trooper Roper approached the driver's side of the Plymouth to inform the driver, whom he later identified as appellant, that he was parked in a "No Parking Zone." Trooper Roper asked appellant for his driver's license and the vehicle registration. While appellant fumbled through the vehicle's console in search of the requested documentation, Trooper Roper observed a clear plastic sandwich bag containing a stack of one hundred-dollar bills. Appellant could not produce his license or the vehicle's registration and would not provide any further information regarding his identity.
While Trooper Roper was speaking to appellant, Trooper Kemmer "called in the plates." The dispatcher returned an "alert tone" to the officers, warning the officers to take caution because there might be something wrong with either the car or its passengers. Hearing the alert, Trooper Roper placed appellant in handcuffs as a safety precaution and Trooper Kemmer proceeded in the same manner with the female passenger. Trooper Roper then instructed Trooper Kemmer to determine why dispatch returned a cautionary alert. The troopers learned that the alert was due to the fact that the license plate was stolen.
Trooper Roper continued to question appellant, who was now standing handcuffed outside of the Plymouth, about his identity. Appellant again refused to identify himself. Appellant requested to speak to his female companion and Trooper Roper stated that he could do so. Appellant told his companion that he loved her and then turning to Trooper Roper, stated his name as Ransom Staley and provided his date of birth and Social Security number. Without solicitation from either trooper, appellant spontaneously stated, "I am a prison escapee from Ohio."
The troopers confirmed appellant's status and then arrested him and his companion. Appellant was returned to Ohio where he had been indicted for escape in violation R.C. 2921.34.
Prior to trial appellant filed a motion to suppress all statements he made to the troopers when he was stopped in Nevada. The trial court overruled appellant's motion and the case proceeded to trial before a jury on May 3, 1999. At the close of the state's case, appellant moved the court for a judgment of acquittal pursuant to Crim.R. 29. The trial court denied the motion. The jury found appellant guilty as charged. The trial court sentenced appellant to eight years in prison and ordered appellant to serve the sentence consecutive to his present term of imprisonment.
From the judgment of the trial court, appellant timely filed an appeal and raises three assignments of error:
Assignment of Error No. 1:
 THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS.
In his first assignment of error, appellant argues that the trial court erred by overruling his motion to suppress. Appellant contends that any statements he made in the presence of the troopers should be suppressed because they did not advise him of his constitutional rights and he was not free to leave since he was in handcuffs.
An appellate court may not disturb a trial court's decision on a motion to suppress where it is supported by substantial credible evidence. Maumee v. Johnson (1993), 90 Ohio App.3d 169,171. The trial court serves as the trier of fact in a suppression hearing and must weigh the evidence and judge the credibility of witnesses. State v. Fanning (1982), 1 Ohio St.3d 19, 20. When reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies upon the trial court's ability to assess the credibility of witnesses, and independently determines "without deference to the trial court, whether the court has applied the appropriate legal standard." State v. Anderson (1995), 100 Ohio App.3d 688, 691.
At issue is whether appellant was subjected to "custodial interrogation" without being given Miranda warnings at that time so that his statements should not have been used against him at trial. See Miranda v. Arizona (1966), 384 U.S. 436, 444,86 S.Ct. 1602, 1612 (holding that the "prosecution may not use statements * * * stemming from a custodial interrogation unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination.")
Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." Id. Encompassed in this definition are two distinct concepts: custody and interrogation. When both factors are present, law enforcement officers must advise an individual of his constitutional rights to insure that self-incriminating statements made by that individual are the result of free choice. Miranda,384 U.S. at 457, 86 S.Ct. at 1619.
Custody encompasses a formal restraint or restraint of movement of the degree associated with a formal arrest.California v. Beheler (1983), 463 U.S. 1121, 1125,103 S.Ct. 3517, 3520. The relevant inquiry is whether a reasonable person in the suspect's position would understand that he was in the custody of the police at the time of the interrogation. Berkemerv. McCarty (1984), 468 U.S. 420, 422, 104 S.Ct. 3138, 3151. Under this standard, a suspect obviously is in custody if he is formally placed under arrest prior to the interrogation. Where the suspect has not been formally arrested, the restraint on the suspect's freedom of movement must be significant in order to constitute custody. See, e.g., State v. Hayes (Sept. 30, 1999), Ashtabula App. No. 97-A-00667, unreported; State v. Featherson (Sept. 27, 1999), Fairfield App. No. 99CA9, unreported.
"[T]he term `interrogation' under Miranda refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Islandv. Innis (1980), 446 U.S. 291, 301, 100 S.Ct. 1682, 1689-90; see, also, State v. Knuckles (1992), 65 Ohio St.3d 494, paragraph two of the syllabus ("when a statement, question or remark by a police officer is reasonably likely to elicit an incriminating response from a suspect, it is an interrogation").
However, the Miranda rules do not prevent the use as evidence every statement made by a person in custody. Law enforcement officials may question a suspect regarding his name, address, height, weight, age, and date of birth as such information is necessary for record keeping and is reasonably related to the administrative concerns of the police. Pennsylvania v. Muniz
(1990), 496 U.S. 582, 601-02, 110 S.Ct. 2638, 2650. Although such questions qualify as interrogation, the answers to the questions are nonetheless admissible because they fall within the "routine booking exception" because the biographical data is necessary to complete booking or pretrial services. Id. Since the gathering of biographical data pursuant to booking is admissible, it logically follows that the same information collected through custodial interrogation prior to booking is also admissible. See,e.g., State v. Clements (Oct. 22, 1992), Franklin App. No. 91AP-1238, unreported; see, also, California v. Byers (1971)402 U.S. 424, 436; 91 S.Ct. 1535, 1541 (holding that compelled disclosure of identity does not violate privilege against self-incrimination even though it may lead to an inquiry that leads to an arrest and charge).
A criminal suspect's voluntary statements are also admissible without regard to whether the law enforcement officials followed the procedural safeguards mandated by Miranda. Miranda,384 U.S. at 478, 86 S.Ct. at 1630 ("any statement given freely and voluntarily without any compelling influences is, of course admissible in evidence. * * * Volunteered statements of any kind are not barred by the Fifth Amendment * * *").
When the statements which appellant sought to suppress are applied to these standards, they are clearly admissible without regard to whether the troopers informed him of his constitutional rights. There is no question that appellant was in custody for purposes of Miranda since Trooper Roper had placed him in handcuffs. However, as noted above, the disclosure of appellant's identity information does not violate the privilege against self-incrimination. In addition, it is not controverted that appellant's admission that he was a prison escapee was a voluntary statement that was the product of free choice, provided without compulsion or interrogation. Appellant's first assignment of error is overruled.
Assignment of Error No. 2:
 THE TRIAL COURT ERRED BY ADMITTING HEARSAY EVIDENCE AT TRIAL TO THE MATERIAL PREJUDICE OF APPELLANT.
In his second assignment of error, appellant argues that trial court erred by admitting into evidence prejudicial hearsay statements. Specifically, appellant challenges the following two colloquies between the prosecutor and Trooper Roper:
 [By the state:] How did you proceed after you have secured the situation for your safety?
 [By Trooper Roper:] Go ahead and confirm with dispatch what the problem is, the discrepancy, the nature of what is going on exactly with the cautionary alert.
Q: What did that alert pertain to?
A: Stolen plates on the vehicle.
[By defense counsel:] Objection.
 [By the court:] It is not offered to prove stolen plates, it is information related to him upon which he acted.
* * *
 [By the state:] Did it appear that the comment he made to you he was escapee from Ohio [sic], did that appear to be accurate?
[By Trooper Roper:] It was accurate, yes.
[By defense counsel:] Objection, your honor.
 [By the court:] I sustain. Ladies and Gentlemen of the jury, you are directed to disregard that.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987),31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion as well as a showing that the accused has suffered material prejudice, an appellate court will not disturb the ruling of the trial court as to the admissibility of evidence. State v.Martin (1985), 19 Ohio St.3d 122, 129, certiorari denied (1986),474 U.S. 1073, 106 S.Ct. 837.
Evid.R. 801(C) defines hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is not admissible, unless it falls within the exemptions in Evid.R. 801(D) or the exceptions enumerated in Evid.R. 803, 804 and 807. See Evid.R. 802.
With regard to the first exchange challenged by appellant, the trial court did not abuse its discretion in allowing the testimony because the trial court correctly concluded that the statement was not hearsay. Trooper Roper's testimony that the dispatcher informed him that the license plate was stolen was not offered to prove that the plate was in fact stolen. As the trial court noted, the testimony was offered to show why Trooper Roper persisted in questioning appellant regarding his identity. Since the testimony was not offered to prove the truth of the matter asserted it is not hearsay and therefore is admissible.
The trial court also did not err with regard to the testimony regarding appellant's status as an escapee because the trial court did not admit the testimony into evidence. Appellant's trial counsel immediately objected to the testimony on the basis of hearsay. The trial court sustained the objection, and directed the jury to disregard the hearsay testimony. A jury is presumed to follow instructions of the court and to obey curative instructions. State v. Loza (1994), 71 Ohio St.3d 61, 79; Statev. Franklin (1991), 62 Ohio St.3d 118, 127.
Accordingly, appellant's second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT ERRED IN OVERRULING THE APPELLANT'S MOTION FOR JUDGMENT OF ACQUITTAL.
In his third assignment of error, appellant argues that the trial court erred in denying his Crim.R. 29 motion for acquittal because there was insufficient evidence to support his conviction for escape. Specifically, appellant argues the state failed to prove his identity, maintaining that the state proved "nothing more than an individual sharing [a]ppellant's name was previously convicted and incarcerated."
Under Crim.R. 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Bridgeman (1978), 55 Ohio St.2d 261, syllabus. This court's standard of review of a claim of insufficient evidence was set forth in State v. Jenks (1991), 61 Ohio St.3d 259, at paragraph two of the syllabus:
 An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. (Jackson v. Virginia
[1979], 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, followed.)
Appellant was convicted of violating R.C. 2921.34, which states:
 No person, knowing the person is under detention or being reckless in that regard, shall purposely break or attempt to break the detention, or purposely fail to return to detention, either following temporary leave granted for a specific purpose or limited period, or at the time required when serving a sentence in intermittent confinement.
R.C. 2921.34(A)(1). "Detention" includes "arrest; confinement in any vehicle subsequent to an arrest; confinement in any public or private facility for custody of persons charged with or convicted of crime in this state or another state * * * or supervision by an employee of the department of rehabilitation * * *." Contrary to appellant's contention, the statute does not require proof of conviction at the time of the escape. The statute does require "a showing that the offender knew he was under detention or perversely disregarded a risk that he was under detention." R.C.2921.24, Committee Comment.
At trial, the state introduced a certified copy of the entry of appellant's assault conviction, for which he was incarcerated at the time of the escape. The entry contained appellant's name, the case number, appellant's plea and the sentence imposed by the trial court. Mary Beedy, records custodian at Madison Correctional, testified that appellant's institution file contains an identical copy of this entry.
Beedy also testified that appellant's file indicated that his original maximum sentence expired on June 12, 2003, but that it had been revised to July 10, 2003 to reflect the twenty-seven days that appellant was missing on "escape status."
Deputy Warden, Margaret Ann Beetler, testified about the details of the OPI vocational program at Madison Correctional. Beetler stated that inmates in OPI programs are at all times under detention at Madison Correctional, even while working on projects located outside of the institution.
Kvarness testified in detail to the events on the morning of January 5, 1999. In addition to recounting the circumstances surrounding appellant's disappearance from the warehouse, Kvarness identified appellant in open court as the escapee, despite appellant's attempts to alter his appearance.
Trooper Roper testified to the circumstances of appellant's arrest on the morning of February 1, 1999, including appellant's voluntary admission that he we was a prison escapee from Ohio. Trooper Roper also recounted the identification information that he gathered from appellant. Trooper Roper also testified that an inventory search of the vehicle appellant was driving revealed a clear plastic bag with $4,800 in large bills, appellant's identification photo, and hair coloring kits. Trooper Roper identified appellant at trial as the same individual he arrested in Nevada.
Finally, Trooper Kevin Brun of the Ohio State Highway Patrol, testified. Trooper Brun was assigned to investigate appellant's escape from Madison Correctional. Trooper Brun assisted with appellant's transport from Nevada to Ohio. Trooper Brun identified appellant in court as the individual who was returned to Madison Correctional from Nevada. Trooper Brun also testified regarding an interview that he conducted with appellant in which appellant discussed the details of his escape, although appellant's story varied from the result's of Trooper Brun's investigation.
From this ample evidence, we find that a rational trier of fact could find appellant guilty of escape beyond a reasonable doubt. As a result, the trial court did not err in denying appellant's Crim.R. 29 motion. Appellant's third assignment of error is overruled.
Judgment affirmed.
WALSH and VALEN, JJ., concur.