OPINION
Defendant-appellant, Charles Johnson Spurlock, appeals his conviction in the Brown County Court of Common Pleas for rape. We affirm the decision of the trial court.
Appellant stopped by the apartment of Lisa Marie Cox on the evening of April 20, 2000 to speak with her "about something personal." Appellant became acquainted with Lisa about nine months earlier when he married her cousin, Charlene. Appellant asked Lisa whether her boyfriend was living with her. Lisa informed appellant that her boyfriend did not live there and walked appellant through the apartment to prove it. When they reached Lisa's bedroom, appellant grabbed her by the arm. He forcibly pulled down Lisa's pants and threw her on the bed. While holding Lisa down, appellant engaged in cunnilingus and inserted his penis into her vagina. When appellant was finished, he patted Lisa on the head and said "I am so sorry, I'll never do it again." Lisa was approximately three months pregnant at the time.
After appellant left Lisa's apartment, she went to a friend's apartment and called the police. Lisa's mother arrived at the apartment complex just as appellant was leaving. When she found Lisa, Lisa was crying and said "Mom, I've been raped." Lisa indicated appellant was the rapist.
When Mt. Orab Police Chief John Dunn arrived at the scene, he located Lisa in the living room of her apartment. Lisa was "pretty hysterical." Lisa took Chief Dunn to the bedroom. Chief Dunn noticed an odor in the bedroom. On the basis of the peculiar odor, Chief Dunn asked if appellant was the rapist. Apparently, Chief Dunn was familiar with appellant's malodorousness, apparently caused because of a lengthy period of "poor hygiene." Lisa acknowledged that appellant, indeed, was the man who had raped her.
Appellant was indicted on one count of rape. He pled not guilty to the charge, maintaining that the sexual contact was consensual. At the conclusion of the state's evidence, appellant moved the court for a judgment of acquittal pursuant to Crim.R. 29. The trial court overruled appellant's motion. The jury found appellant guilty as charged. Appellant appeals from his conviction and raises two assignments of error.
Assignment of Error No. I:
 THE TRIAL COURT ERRED IN REACHING A GUILTY VERDICT AGAINST THE APPELLANT.
In his first assignment of error, appellant challenges his conviction on two separate bases. First, appellant argues that the state failed to introduce legally sufficient evidence to support his conviction. Second, appellant argues that his conviction is against the manifest weight of the evidence. Each argument will be addressed in turn.
"An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, N paragraph two of the syllabus. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
Appellant was convicted of rape in violation of R.C. 2907.02-(A)(2), which states: "No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force." "Sexual conduct" includes vaginal and anal intercourse, fellatio, and cunnilingus. R.C. 2907.01(A). Any penetration, however slight, is sufficient to complete vaginal or anal intercourse. Id.
Lisa testified that appellant forcibly pulled down her pants. Lisa described how appellant held her down while engaging in cunnilingus. Despite her protests, appellant inserted his penis into her vagina. Lisa testified that appellant patted her on the head when it was over and said "I am so sorry, I'll never do it again."
Lisa's mother testified that she went to her daughter's apartment on the evening of the rape. She saw appellant leaving the apartment complex. Minutes later, she found Lisa distraught. Lisa said "Mom, I've been raped." Lisa told her that appellant was the one who had raped her.
Tammy Noble, an acquaintance who occupies the apartment directly beneath Lisa's apartment, testified that she saw appellant enter the apartment building the night of the rape. Later, she heard an unusually loud thump, like something hit the floor above her. The impact of the "thump" broke one of her chandeliers. Later, Tammy saw Lisa speaking with her mother. Tammy described Lisa as being "very hysterical" and "really upset."
Lieutenant Brian Mount of the Mt. Orab Police investigated the crime pursuant to the order of Chief Dunn. Lt. Mount testified that appellant arrived voluntarily at the Mt. Orab police station after hearing on a police scanner that he was the subject of a "be-on-the-lookout," or "BOLO," dispatch. Lt. Mount described his interview with appellant.
First, appellant denied seeing Lisa. Then he admitted he stopped by to see her. Appellant told Lt. Mount that he had consensual sex with Lisa. After being interviewed by another investigator, appellant changed his story again. Lt. Mount produced a written statement in which appellant admitted he pushed Lisa onto the bed, took her pants off and put his penis in her vagina. He wrote that he did not stop until he "got off."
William Lewis, an independent investigator used by the Mt. Orab police department, testified about his interview with appellant. He interviewed appellant after appellant told Lt. Mount that the sexual conduct was consensual. During the course of their interview, appellant admitted that he forced his penis into Lisa's vagina and held her down on the bed. At Lewis' request, appellant wrote a "letter" to Lt. Mount apologizing for lying during his initial interviews. This letter precipitated appellant's written statement to Lt. Mount.
Viewing this ample evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could find the essential elements of rape proven beyond a reasonable doubt.
An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the fact-finder's resolution of any conflicting testimony. Statev. Thompkins (1997), 78 Ohio St.3d 380, N 389. The Ohio Supreme Court has summarized the standard for reversal based upon manifest weight of the evidence as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
 Id. at 387, quoting State v. Martin (1983), 20 Ohio App.3d 172. In making this analysis, the reviewing court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass
(1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
In contrast to the state's evidence, Charlene Spurlock testified in appellant's defense. Charlene is both appellant's wife and Lisa's cousin. Charlene testified that she, appellant and Lisa had previously engaged in a menage a trois. According to Charlene, Lisa stated that night that she "was going to have sex with [appellant] and break up" their marriage. Charlene also testified that Lisa asked her permission to have sex with appellant.
Considering all of the testimonial evidence at trial, we do not disagree with the jury's resolution of the conflicting testimony. It is the role of the jury to weigh the state's evidence of rape against appellant's attempt to demonstrate that Lisa wanted to engage in sexual conduct with appellant. The jury was in the best position to fully assess the credibility of the witnesses. Based on a review of the record, we conclude that the jury did not lose its way or create a fundamental miscarriage of justice by finding appellant guilty of rape. Accordingly, appellant's first assignment of error is overruled.
Assignment of Error No. II:
 THE TRIAL COURT ERRED IN ALLOWING HIGHLY PREJUDICIAL TESTIMONY IN WHEN THE PROBATIVE VALUE WAS MINIMAL AND THE TESTIMONY WAS CONFUSING AND MISLEADING.
In his second assignment of error, appellant argues that he was deprived of a fair trial because the trial court allowed Chief Dunn to testify about appellant's body odor. Appellant maintains that the prejudicial impact of the testimony outweighed its probative value. In addition, appellant appears to argue that Chief Dunn's testimony regarding appellant's odor was an inappropriate expert opinion.
The admission or exclusion of relevant evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Generally, all relevant evidence is admissible. Evid.R. 402. However, relevant evidence is not admissible where its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury. Evid.R. 403(A); State v. Jurek (1989), 52 Ohio App.3d 30, 35. Absent an abuse of discretion and a showing that the accused has suffered material prejudice, an appellate court will not disturb the ruling of the trial court as to the admissibility of relevant evidence. State v. Martin
(1985), 19 Ohio St.3d 122, 129, certiorari denied (1986), 474 U.S. 1073,106 S.Ct. 837. The term "abuse of discretion" connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Rivera (1994),99 Ohio App.3d 325, N 328.
Generally, a witness is competent to testify about relevant matters of which he has personal knowledge. See Evid.R. 602. A witness acquires personal knowledge by perceiving a fact through one or more of his five senses. Staff Note to Evid.R. 602.
Chief Dunn's testimony about appellant's body odor was not an expert opinion. Chief Dunn testified that he had perceived appellant's "very distinctive odor" prior to the rape. On the basis of the peculiar odor he had sensed before, Chief Dunn asked Lisa if appellant was the rapist because he smelled the same odor in her bedroom. Therefore, Chief Dunn's testimony was based on his own personal knowledge.
Appellant argues that the testimony about his "distinctive odor" caused him unfair prejudice. However, the probative value of Chief Dunn's testimony was its corroboration of Lisa's testimony. On the issue of consent, Lisa testified that she "would not touch appellant if he was the last man on earth [because] he didn't even take a bath." Chief Dunn's testimony is probative to the extent it corroborates Lisa's testimony on the issue of lack of consent. Appellant admitted to sexual conduct with Lisa, but contended at trial that the sexual conduct was consensual, despite his own written admission to the rape. We fail to see how the reference to appellant's body odor caused unfair prejudice on the issue of whether he raped Lisa. Malodor does not make a person a rapist. The trial court did not abuse its discretion by admitting the evidence. Appellant's second assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.