OPINION
Defendant-appellant, Otis Hensley, appeals his conviction in the Warren County Court of Common Pleas for felonious assault. Based upon the reasons that follow, the trial court's judgment is affirmed.
In May 1999, appellant was indicted on one count of felonious assault in violation of R.C. 2903.11(A)(1) and one count of felonious assault in violation of R.C. 2903.11(A)(2), both second-degree felonies. The charges stemmed from an incident that occurred in the early morning hours of March 19, 1999, wherein appellant, along with Robert Skidmore allegedly assaulted Robert King with pool cues and/or beer bottles at the Silver Bar in Franklin, Ohio. King suffered numerous injuries to his face, hands, and arms. As a result of the assault, King has permanently lost sight in his left eye.
Appellant pled not guilty to the charges and the case was tried to a jury. At trial, the state of Ohio presented the testimony of King as well as the testimony of law enforcement officers who responded to the scene after the altercation.
King testified that on the night in question he became intoxicated before he arrived at the Silver Bar and remembers very little about what happened there. King testified that he arrived at the bar with his brother-in-law, Phillip Zink. King could not remember whether appellant or Skidmore were there. King testified that he did not recall talking to appellant or Skidmore. King testified that when he decided to leave the bar and walked out the door, he was hit in the back of the head. King testified that he was not armed with a pool cue, a knife, or any other weapon when he walked outside. King further testified that although he tried to protect himself, he did not hit anyone. King testified that the beating seemed to last "forever" and it finally stopped when he heard police sirens. King was taken to a hospital by ambulance.
Officer Brian Pacifico testified that he was dispatched to the Silver Bar that night. As he drove towards the Silver Bar, he noticed a vehicle driving southbound from the Silver Bar. Pacifico testified that when he first observed the vehicle, it was less than a half of a mile from the Silver Bar. Pacifico stopped the vehicle after it ran a red light. Pacifico testified that Skidmore was driving the vehicle and that appellant was sitting in the front passenger seat. Also, a woman, Shelby Carnes, was sitting in the back seat of the vehicle. Pacifico noticed that appellant had grass stains on him and blood on his jacket, pants, and hands. Pacifico testified that despite appellant's bloody appearance, he did not appear to be bleeding.
Steven Dunham, a police officer for the city of Franklin, testified that he was dispatched to the Silver Bar and photographed the crime scene. Dunham also assisted Pacifico during the traffic stop of Skidmore's vehicle. Dunham testified that while Pacifico administered a field sobriety test to Skidmore, he spoke with appellant. Dunham testified that appellant appeared to be intoxicated, although he was not "falling down drunk or anything." Dunham asked appellant about blood he saw on appellant's pants. Appellant said that his arm had been hit with a pool cue. However, Dunham did not recall seeing any injury to appellant or noticing that appellant was bleeding. Dunham offered to call for medical assistance, but appellant refused.
Dunham testified that appellant told him that he had been attacked at the Silver Bar. Dunham testified that appellant stated that a man had struck him in the arm with a pool cue and then "came at him with a knife." Appellant told Dunham that he had "taken the male to the ground," kicked him two or three times, took the knife away from him, and left. Dunham found a knife on appellant's person during the traffic stop.
Christopher Brombaugh, a deputy sheriff for the Warren County Sheriff's Office testified that he was also dispatched to the Silver Bar on the night of the altercation. Brombaugh testified that when he arrived, he saw King lying on the ground, trying to sit up, and holding his head. King was bleeding profusely. Brombaugh noticed that King's "left eye was swollen to the point where it appeared it was out of the skull * * *." Brombaugh also saw "several large lacerations to the head itself with blood coming out." Brombaugh testified that he saw "flesh hanging out" of King's arm, exposing the bone.
Brombaugh testified that King was "going in and out" of consciousness. King was upset and in pain. Brombaugh remained with King until emergency medical assistance arrived and placed King into an ambulance. Brombaugh testified that at the crime scene he observed "[s]everal pieces of broken cue stick * * *, multiple broken bottles, whole bottles not broken, [and] excessive amounts of blood on the ground." Brombaugh depicted these things in a drawing of the crime scene. Brombaugh also physically collected this evidence.
Brombaugh testified that after being stopped by law enforcement, Skidmore and appellant were transported to the Silver Bar, where they were arrested. Brombaugh testified that appellant was "bloody" at the time of his arrest but did not appear to be injured. Brombaugh also testified that appellant appeared to be intoxicated.
Brombaugh testified that although he sent various pieces of evidence for fingerprint analysis, no latent fingerprints matched. Brombaugh admitted that he did not receive results from a blood analysis he requested because the test was never administered. Brombaugh explained that he did not find out about the crime lab's failure to conduct the blood test until the day of Skidmore's trial, which was about two weeks before appellant's trial began.
At the close of the state's evidence, appellant moved the trial court for an acquittal. The trial court overruled this motion, and the defense began its presentation of the evidence.
Appellant testified that he arrived at the Silver Bar with Skidmore and Carnes at about 1:30 a.m. Appellant testified that he drank about four or five beers before coming to the bar that night and that he probably drank two or three more beers before King and Zink arrived. Appellant testified that "[a]s soon as [King] came in he started. He was going to hurt somebody." Appellant testified that King pointed at him and said, "I'm going to hurt you." Appellant testified that he did not know King and had never seen him before. Appellant testified that he asked King "what his problem was."
Appellant testified that at that point the bartender came out and calmed things down. Appellant testified that the bartender started to ask King to leave when appellant decided that King was okay and decided to buy him a beer. Appellant testified, "After I bought him a beer he wouldn't shut up and he just kept on and on and on." Appellant testified that he tried to start conversations with King and shot a game of pool with him. Appellant testified that King "kept smarting off here and there, but I thought he'd cool down because I bought him a second beer."
Appellant testified that King "started right back again" and the bartender asked King and Zink to leave. Then appellant and Skidmore drank two more beers before deciding to leave. Appellant testified:
 I took maybe two steps out the door and a cue stick come [sic] flying round. As I throwed [sic] my arm up and caught it, it went down my arm. I grabbed the pool stick and grabbed him. As we struggled, we turned. He fell [face down] into the bushes with me on top of him. I got the pool stick from him and I threw it. I threw it behind me. We scuffled around a little bit because I was coming up and he was coming out with a knife.
 Appellant testified that he tried to back away but that King "[came] up pretty fast with a knife in his hand." Appellant testified that they started "wrestling around again and I jerked the knife and cut his hand." When asked what happened next, appellant testified:
 We rolled around a little. He punched me a time or two. I turned to leave again. I thought I had him down. Actually, I thought he was out. He grabbed me around the legs. He wouldn't let me go. I kicked him a couple times. I tried to get away again and he done [sic] the same thing.
 Appellant testified that King continued to attack him, even though he tried to back away. Appellant testified that after King grabbed his leg again, appellant kicked him a few times and left. Appellant testified that while he was involved in the altercation with King, Skidmore was fighting Zink.
Appellant claimed that he acted in self-defense. Appellant testified that he never threatened King and tried to get away from him as soon as he could. Appellant testified that although he drank several beers that night he "wasn't what you call drunk." Appellant testified that he was injured during the altercation in that his head was scratched when he went into the bushes. Appellant denied hitting King with a pool cue or a beer bottle. Appellant testified that he had not intended to cut King's hand with the knife, although that happened when he was trying to get the knife away from King. Appellant testified that he believed that if he did not defend himself from King he would suffer serious physical harm.
After the testimony was heard, the trial court presented two stipulations between the parties. First, the parties stipulated that King was under the influence of alcohol at the time of the incident. Second, the parties stipulated that a blood alcohol test taken of King a few hours after the incident revealed that his blood alcohol content was .283.
At the conclusion of the trial, the jury found appellant guilty of the first count of felonious assault in violation of R.C. 2903.11(A)(1) and not guilty of the second count, which was charged under R.C. 2903.11(A)(2) (felonious assault using a deadly weapon). Appellant was sentenced to six years in prison. Appellant filed this appeal, in which he raises three assignments of error.
Assignment of Error No. 1:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANT-APPELLANT WHEN IT DENIED DEFENDANT-APPELLANT'S MOTION FOR ACQUITTAL.
In the first assignment of error, appellant argues that the trial court erred by denying his Crim.R. 29(A) motion. Appellant contends that the evidence introduced by the prosecution at trial was insufficient to prove that appellant was the person responsible for causing serious physical harm to King.
When reviewing the trial court's denial of a motion for acquittal under Crim.R. 29, this court applies the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction. State v. Thompson (1998), 127 Ohio App.3d 511, 525. The function of an appellate court when reviewing the sufficiency of the evidence underlying a criminal conviction is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id.
Appellant was convicted of felonious assault, a violation of R.C.2903.11(A)(1), which states, "No person shall knowingly: Cause serious physical harm to another." R.C. 2901.22(B) provides, "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Appellant insists that the state failed to prove the elements of felonious assault beyond a reasonable doubt and that his motion for acquittal should have been granted. Appellant argues, "The state completely failed to link Otis Hensley to Robert King * * *."
Despite appellant's argument to the contrary, the state presented evidence demonstrating that appellant was involved in an altercation with King at the Silver Bar on the night in question. Appellant was in the vehicle driven by Skidmore, which was seen within a half mile of the Silver Bar. Dunham talked to appellant during the traffic stop of Skidmore's vehicle. Appellant told Dunham that he had been attacked at the Silver Bar. Appellant admitted that he had "taken the male to the ground," kicked him two or three times, took the knife away from him, and left. Appellant's clothes were covered in blood, even though he did not appear to require medical attention. Dunham found a knife on appellant's person during the traffic stop. When Brombaugh arrived at the Silver Bar, he saw King lying on the ground and bleeding profusely.
There is evidence that appellant was involved in an altercation with King that resulted in serious physical harm to King. There is also evidence that appellant acted knowingly. There is evidence that, regardless of appellant's purpose, he was aware that his conduct would probably cause serious physical harm to King. After viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could have found that the essential elements of felonious assault had been proven beyond a reasonable doubt. See Jenks, 61 Ohio St.3d at paragraph two of the syllabus. Therefore, the trial court's decision to overrule the motion for acquittal was appropriate. The first assignment of error is overruled.
Assignment of Error No. 2:
 THE JURY'S VERDICT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE, [SIC] AND IS CONTRARY TO LAW.
The standard of review based upon the manifest weight of the evidence has been summarized as follows:
 The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
State v. Thompkins (1997), 78 Ohio St.3d 380, 387, quoting State v.Martin (1983), 20 Ohio App.3d 172, 175. An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. Thompkins at 389. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence. State v. DeHass (1967),10 Ohio St.2d 230, paragraph one of the syllabus.
We find that appellant's felonious assault conviction is supported by the weight of the evidence. Although appellant testified that he acted in self-defense, the jury, which was in the best position to judge the credibility of witnesses and the weight to be given the evidence, chose to disbelieve his testimony. Reviewing the record and weighing the evidence and the reasonable inferences, we cannot find that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. The second assignment of error is overruled.
Assignment of Error No. 3:
 THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT ADMITTED STATES [SIC] EXHIBITS 7 THROUGH 14 INTO EVIDENCE.
In the third assignment of error, appellant argues that it was plain error to admit state's exhibits seven through fourteen into evidence because the probative value of these exhibits was outweighed by the danger of unfair prejudice. Appellant asserts that the admission of these exhibits violated his right to a fair trial.
"The admission or exclusion of relevant evidence rests within the sound discretion of the trial court." State v. Robb (2000), 88 Ohio St.3d 59,68, quoting State v. Sage (1987), 31 Ohio St.3d 173, paragraph two of the syllabus. Absent an abuse of discretion, as well as a showing that the accused has suffered material prejudice, a reviewing court will not disturb the ruling of the trial court as to the admissibility of evidence. State v. Martin (1985), 19 Ohio St.3d 122, 129.
Appellant did not object to the admission of state's exhibits seven through fourteen for the reason he now raises on appeal.[1] Because appellant failed to bring this argument to light in the trial court, the trial court's decision to admit these exhibits shall not be reversed unless the admission constituted plain error.
In criminal cases "[p]lain errors or defects affecting substantial rights" that were not brought to the trial court's attention may be addressed through Crim.R. 52(B). In order to find plain error, it must appear on the face of the record that the error was committed and that, but for the error, the result of the trial clearly would have been otherwise so that to not consider the error would result in a clear miscarriage of justice. State v. Williford (1990), 49 Ohio St.3d 247,252, citing State v. Cooperrider (1983), 4 Ohio St.3d 226, 227.
State's exhibits seven through fourteen consist of the following: Exhibit seven is a video of the traffic stop of Skidmore and appellant, which includes the conversation between appellant and Dunham regarding the fight at the Silver Bar. Also recorded in this video is footage of the Silver Bar after the altercation occurred. Exhibit eight is another video of the traffic stop as recorded by a camera from Pacifico's police cruiser. Exhibit nine is Brombaugh's drawing of the crime scene, which indicates where King was discovered when law enforcement officers arrived. Exhibit ten consists of two pieces of a pool cue that were recovered from the Silver Bar parking lot. Exhibit eleven is a beer bottle that has not been broken but has blood and hair on the bottom. Exhibit twelve includes a jean jacket taken from appellant on the night of the assault, which is covered with blood as well as a pair of appellant's shoes that contain spots of blood. Exhibit thirteen consists of a broken pool cue covered with blood; a shirt that appellant was wearing when he was arrested that has blood on the front of the neck and a "smudge" of blood on the chest; blue jeans that appellant was wearing; and a flannel shirt belonging to appellant. Exhibit fourteen includes clothing that Skidmore was wearing; socks that appellant was wearing; and broken beer bottles covered with blood that were retrieved from the Silver Bar parking lot.
Appellant argues that state's exhibits seven through fourteen should not have been admitted into evidence pursuant to Evid.R. 403. Evid.R. 403(A) states, "Although relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Appellant's brief states, "because there was no direct evidence that the blood on Otis Hensley's clothing could be linked to Robert King, the probative value of the clothing was substantially outweighed by the prejudice to Otis Hensley the admission of that evidence would create." Similarly, appellant argues that it was error to admit the broken pool cues and beer bottles found at the scene of the crime because these items were not directly linked to appellant or King.
By his own testimony, appellant admitted that he was involved in a fight that took place at the Silver Bar. This admission, along with the fact that appellant was stopped by law enforcement officers within a mile from the Silver Bar after the alteration occurred, leads to the reasonable inference that the blood on appellant's clothing was a result of the fight. It can also be inferred that the broken pool cues and beer bottles found on the scene were used in the assault. Appellant himself testified that the fight began when he was hit with a pool cue. In our opinion, the probative value of these exhibits was not substantially outweighed by the danger of unfair prejudice. Nor has appellant demonstrated that the admission of these exhibits resulted in material prejudice.
We are not convinced that the trial court abused its discretion in deciding to admit these exhibits. Appellant has not shown error, let alone plain error. Therefore, the third assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and POWELL, J., concur.
[1] At trial, appellant objected to the admission of these exhibits based upon an allegation that the chain of custody had been broken. Appellant does not pursue this argument on appeal.