DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Juan Otero, appeals his conviction for possession of cocaine, permitting drug abuse, and possession of criminal tools rendered by a jury in the Summit County Court of Common Pleas. We affirm.
 I. {¶ 2} Otero's girlfriend, Sabrina Glover, rented an apartment at 779 E. Exchange in Akron, Ohio. Otero stayed with Glover frequently and kept personal items at her apartment. While giving a haircut to an Akron police detective at a barbershop across the street from the apartment, the barber told the detective that there was a lot of activity surrounding the apartment; that is, there was a lot of automobile and foot traffic, involving people going to the apartment and staying for only a short time. The barber told the detective he felt this was indicative of drug traffic.
 {¶ 3} The detective arranged for a surveillance of the apartment. The police department sent an informant into the apartment to engage in controlled buys. The buys were recorded by officers monitoring the transactions from an unmarked police car. The police department obtained a search warrant for the apartment based upon the buys.
 {¶ 4} On September 19, 2002, police officers executed the search warrant. While monitoring the house prior to execution, the police observed Glover and another woman arrive in a car, load garbage bags into the vehicle, and then drive back out onto the roadway. The police stopped the vehicle a few blocks from the apartment, put handcuffs on Glover and seated her in a police cruise. The officers returned to the apartment and conducted the search. Inside the apartment, officers found a film canister containing crack, a bag of marijuana, a scale, a razor blade, a gun with ammunition, and a man's jacket with powder cocaine in the pockets. Glover implicated Otero in the ownership of these items.
 {¶ 5} Both Glover and Otero were charged and indicted. Glover entered into a plea agreement whereby she consented to testify against Otero. Otero's case went to trial and the jury returned guilty verdicts for possession of cocaine, for permitting drug abuse, and for possession of criminal tools. Otero timely appealed raising five assignments of error. We address some assignments of error together to facilitate review.
 II. Assignment of Error No. 1
"[Otero's] conviction was against the manifest weight of the evidence because [Otero] did not constructively possess any drugs."
 Assignment of Error No. 2
"The case should have been dismissed because there was not sufficient evidence to warrant the cases overcoming rule 29 motion"
 {¶ 6} In the first assignment of error, Otero argues that his conviction for cocaine possession under R.C. 2925.11, and permitting drug abuse under R.C. 2925.13, was against the weight of the evidence because the testimony indicated that he was not at the site of the apartment the day of the search, that the drugs did not belong to him, and that Otero was not the tenant or the lessee of the apartment. In the second assignment of error, Otero argues that the same evidence proves that the state did not meet their burden of sufficiency, and the trial court erred in denying a motion for acquittal. We disagree.
 {¶ 7} As an initial matter, this court notes that the sufficiency and manifest weight of the evidence are legally distinct issues. State v. Manges, 9th Dist. No. 01CA007850, 2002-Ohio-3193, at P22, citing State v. Thompkins (1997),78 Ohio St.3d 380, 386. Sufficiency tests whether the prosecution has met its burden of production at trial such that the evidence is legally sufficient to support a conviction, whereas a manifest weight challenge questions whether the prosecution has met its burden of persuasion. Manges, at P24.
 {¶ 8} In reviewing whether a conviction is against the manifest weight of the evidence, this court must:
"[R]eview the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339,340.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No 96CA006462, at 4.
 {¶ 9} For the charge of possession of cocaine, the jury instructions stated:
"Two or more persons may have possession if together they have the ability to control the item exclusive of others.
"A person has possession when he knows that he has the object on or about his person or property, or places it where it is accessible to his use or direction and he has the ability to direct or control its use."
 {¶ 10} On the charge of permitting drug abuse, the jury instructions stated:
"Before you can find the defendant guilty of permitting drug abuse, you must find the following elements behind a reasonable doubt: That on or about the 19th day of September, 2002, in Summit County, Ohio, that the defendant, Juan A. Otero, did, as the owner, lessee, or occupant, or who had custody, control, or supervision of premises, to wit: 779 East Exchange Street, apartment two, Akron, Ohio, knowingly permitted such premises to be used for the commission of a felony drug abuse offense, to wit: Possession and trafficking in cocaine, by another person, i.e., Sabrina Glover."
 {¶ 11} Otero does not argue on appeal that the instructions were erroneous.
 {¶ 12} At trial, Det. Harvey of the Akron police department's Street Narcotic Uniform Detail ("SNUD") testified that on September 9, 2002 and September 16, 2002 he monitored the controlled buys of an informant inside the residence; the informant was wearing a wireless microphone and used marked money to make the buys. Det. Harvey stated that, while monitoring the buys, he could hear the informant completing the buys from a male in the room. Det. Harvey also testified that he was part of the team that executed the search warrant; he found a film canister containing crack cocaine in a kitchen cupboard along with a small baggy of marijuana. On cross examination, Det. Harvey stated that he did not go into the apartment during the buys, that he could not identify the male voice of the seller, and that he did not see Otero at the apartment or in possession of drugs. Det. Harvey further testified on cross that he recovered the razor blade and the scale. Upon redirect, Det. Harvey stated that residue upon the razor blade appeared to be crack and that such blades are used for preparing crack for distribution. Det. Harvey also stated that he did not attempt to lift fingerprints from the razor blade.
 {¶ 13} Sabrina Glover testified that on September 19, 2002 she had lived at 779 E. Exchange for 8 months with her boyfriend, Otero, and that they had been together as a couple for about a year and four months. Glover stated that when initially stopped by the police, she told them there were no drugs in the apartment, but then admitted that there was a film canister containing crack in the cupboard. Glover claimed that she had lost her job and Otero convinced her to sell drugs as a means to earn money to pay bills; she agreed because she loved him, and so she allowed him to take over. Glover stated that prior to selling with Otero, she had never sold drugs in the past. Glover further stated that she initially moved into the apartment alone; however, a couple of weeks later, Otero also moved in, although he kept some possessions at another location. Glover testified that Otero had a key and slept there during the week, but spent weekends elsewhere. Glover stated that both she and Otero were equally involved in the drugs selling; however, the major purchases of drugs for resale were accomplished by Otero. Glover said that she had seen the scale at the apartment; Otero would use it to weigh the drugs and he used the razor blade to cut the crack down into smaller pieces for sale. Glover also said that Otero would go out into the community and spread word among drug users to go to 779 Exchange St. to purchase their drugs. Glover further stated that her own nickname for sales was `China' and Otero's nickname was `Jay'. Glover identified the jacket found in the house as belonging to Otero, and she said that Otero bought the scale. Glover claimed that Otero sold out of the house maybe 50-60 times a week. On cross examination, Glover admitted that, although Otero lived at the apartment, he didn't take responsibility for expenses and did not sign the lease. On redirect examination, Glover stated that she allowed Otero to purchase a gun in her name because she knew that Otero could not purchase it in his name due to having a prison record. Upon objection, the trial court struck the reference to a prison record and instructed the jury to disregard the testimony. Glover also testified that the apartment was burglarized and she and Otero filed a police report which listed Otero as a victim of the break in.
 {¶ 14} Another SNUD officer, Det. Carney testified that, while executing the search warrant, he found a gun on the floor of the apartment, and a gray Ecko jacket on a hook on the window sill which contained crack and powder cocaine in the its pockets. On cross-examination, Det. Carney stated that he did not see Otero in the apartment, that he never spoke with Otero, and that he did not take fingerprints from the razor blade, the scales, the guns, or the bullets from the gun.
 {¶ 15} Det. Schmidt, the SNUD officer who was advised of the traffic by his barber, testified that the police department started making investigatory stops of people coming and going from the address and subsequently arrested around a dozen people for possession of drugs. Det. Schmidt stated that some of the people arrested claimed to have bought drugs from a man and a woman at the address; they knew the man who was selling by the name of Jay. Det. Schmidt testified that he videotaped the house before the search warrant execution and observed Otero exit the apartment, and go to Glover's car. Det. Schmidt also observed Glover exit the apartment, and then both Glover and Otero went back inside the apartment. Det. Schmidt also testified that he heard the audiotape of a controlled buy and heard a male voice inside the house. Det. Schmidt stated that the informant identified Otero from a photo line-up as the person from whom the informant bought the drugs. Det. Schmidt further testified that during the half hour the officers were executing the search warrant, six to eight people arrived seeking to buy drugs. Det. Schmidt also testified that Otero had a prior conviction for trafficking in cocaine and possession, and Otero had pled guilty to those charges. Det. Schmidt testified that he interviewed Otero subsequent to Otero's arrest, and Otero was wearing pants which matched the jacket found at the apartment; Otero admitted to Det. Schmidt that the drugs in the jacket belonged to him, that he sells about an ounce of crack a week or less, and that he went with Glover on her buys in order to protect her. On cross examination, Det. Schmidt testified that one person seeking to buy drugs while the police were conducting the search asked for Otero by his first name, and another prospective buyer asked for Otero using Otero's nickname, Jay. Det. Schmidt also testified that he never saw Otero at 779 E. Exchange, that he didn't know where Otero lived at time of interview, that Otero did not sign the lease agreement for 779 E. Exchange, and that he didn't observe Otero sell drugs.
 {¶ 16} Given the above testimony, a reasonable fact finder could conclude that Otero had control over the drugs either solely or jointly with Glover. Furthermore, a reasonable fact finder could conclude that Otero was an occupant of 779 E. Exchange, even though he did not sign the lease, and that he knowingly permitted the residence to be used by Glover to sell controlled substances. This court does not believe the conviction is against the manifest weight of the evidence and we are unable to conclude that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. Our ruling on the issue of manifest weight is also dispositive on the issue of sufficiency. Otero's first two assignments of error are overruled.
 Assignment of Error No. 3
"[Otero's] Sixth Amendment Rights were violated as he received ineffective assistance of counsel."
 {¶ 17} In his third assignment of error, Otero argues that he was denied effective assistance of counsel because his attorney did not object to the jury instructions for the possession of cocaine charge. Further, Otero argues that his counsel should have objected to the testimony of Det. Schmidt who stated that the informant identified Otero from a photo lineup because the testimony constituted inadmissible hearsay. We disagree.
 {¶ 18} The United States Supreme Court enunciated a two-part test to determine whether counsel's assistance was ineffective as to justify a reversal of sentence or conviction. Strickland v.Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674. "First, the defendant must show that counsel's performance was deficient." Id. To show the deficiencies in counsel's performance, a defendant must prove "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, a defendant must establish that counsel's deficient performance resulted in prejudice to the defendant which was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." State v. DeNardis (Dec. 29th, 1993), 9th Dist. No 2245 at 4, citing Strickland, 466 U.S. at 690.
 {¶ 19} Upon reviewing counsel's performance, there is a strong presumption that counsel's actions were part of a valid trial strategy. Strickland, 466 U.S. at 689. "A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound strategy." Statev. Watson (July 30, 1997), 9th Dist. No 18215, at 4. We note that there are numerous avenues through which counsel can provide effective assistance of counsel in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel. State v. Gales (Nov. 22, 2000), 9th Dist. No. 00CA007541, at 17; State v. Clayton (1980), 62 Ohio St.2d 45,49.
 {¶ 20} The trial transcript at page 392 demonstrates that Otero's counsel objected to the jury instructions regarding constructive possession; that is, when a person knows the object is on or about his person, property, or places where the object is accessible to his use or direction and he has the ability to direct or control its use. Therefore, Otero's argument that his counsel should have objected has no merit and Otero cannot show error so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment.
 {¶ 21} The testimony of Det. Schmidt regarding the informant's identification of Otero from a photo line-up was a small portion of the total evidence. The evidence included testimony regarding other people who identified Otero as a person who sold them drugs. Glover testified that Otero sold drugs, Otero admitted he sold cocaine, and Otero stated he lived at 779 E. Exchange on a police report regarding a break in. Police officers testified that they found drugs within Otero's residence. Therefore, Otero is far from demonstrating his counsel's performance resulted in prejudice which was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Otero's third assignment of error is overruled.
 Assignment of Error No. 4
"The court [denied otero's due process rights when the court refused to allow otero to recall witness Glover to the stand.]
 {¶ 22} In his fourth assignment of error, Otero argues that his due process rights to call defense witnesses was violated when the court refused to allow Otero to recall Glover to the stand. Otero proffered that he would recall Glover to testify that her sentencing hearing had been postponed; the court ruled the testimony irrelevant.
 {¶ 23} The right of a criminal defendant to present witnesses on his own behalf in order to establish a defense is a fundamental element of due process of law. Taylor v. Illinois
(1988), 484 U.S. 400, 409; Washington v. Texas (1967),388 U.S. 14, 19; Lakewood v. Papadelis (1987), 32 Ohio St.3d 1, 5. However, the right is not without some limitations. State v.Gregory (Sept. 30, 1991), Butler App. No. CA91-03-052. The accused's right to compulsory process is intended to ensure that judgments are not founded on a partial or speculative presentation of the facts. Taylor, 484 U.S. at 411. However, the right to call witnesses on one's behalf does not automatically permit presentation of evidence which is irrelevant. Gregory, supra.
 {¶ 24} "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Evidence which is not relevant is not admissible." Evid.R. 402. A trial court enjoys broad discretion in the exclusion and admission of evidence and this Court will not overturn an evidentiary ruling absent an abuse of discretion resulting in material prejudice.State v. Martin (1985), 19 Ohio St.3d 122, 129.
 {¶ 25} The trial court concluded, and we agree, that Glover's testimony regarding her postponed sentencing would not provide any evidence having a tendency to make Otero's possession of drugs and criminal tools more probable or less probable than it would be without the testimony. The jury was already aware that Glover had entered into a plea agreement, that she had not been sentenced, that her sentence would depend upon her giving willing and truthful testimony, and that, ultimately, only the judge could determine the length of her sentence. Accordingly, we conclude that the trial court did not err in ruling the additional testimony irrelevant and disallowing Otero to recall Glover for that purpose.
 {¶ 26} Otero's fourth assignment of error is overruled.
 Assignment of Error No. 5
"The court improperly denied [Otero's] motion for a mistrial when the witness Glover testified that she knew [Otero] had been in prison before."
 {¶ 27} In the last assignment of error, Otero argues that the trial court should have granted his motion for a mistrial based upon Glover's testimony for the state that she knew Otero had been imprisoned prior to these charges.
 {¶ 28} Upon review of the trial transcript, we find no motion for a mistrial was before the court. Therefore, Otero cannot show error and his fifth assignment of error is overruled.
 III. {¶ 29} Otero's five assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
Carr, J. and Batchelder, J., concur.