[Cite as *State v. Maerlender*, 2011-Ohio-2515.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

## JOURNAL ENTRY AND OPINION
## No. 95071

---

## STATE OF OHIO

### PLAINTIFF-APPELLEE

vs.

## WILLIAM R. MAERLENDER

### DEFENDANT-APPELLANT

---

## JUDGMENT:
## AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-520988

**BEFORE:**   Rocco, J., Kilbane, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:**   May 26, 2011

-i-

**ATTORNEY FOR APPELLANT**

Jennifer J. Scott
The Rockefeller Building
614 W. Superior Avenue, Suite 1402
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

BY:   Katherine Mullin
Assistant Prosecuting Attorney
The Justice Center
1200 Ontario Street
Cleveland, Ohio 44113

KENNETH A. ROCCO, J.:

{¶ 1} Defendant-appellant William Maerlender appeals from his convictions after a jury found him guilty of two counts of rape, one count of kidnapping, and one count of gross sexual imposition ("GSI").

{¶ 2} Appellant presents three assignments of error.  He claims his trial counsel provided ineffective assistance in several respects, the trial court

made improper evidentiary rulings, and his convictions are not supported by either sufficient evidence or the manifest weight of the evidence.

{¶ 3} Upon a review of the record, this court cannot find that any of appellant's claims have merit. Therefore, his convictions and sentence are affirmed.

{¶ 4} Appellant's convictions result from an incident that occurred over the night of July 30 through the early morning hours of the next day. The victim, AD,[1] provided the following account at appellant's trial.

{¶ 5} In April, 2008, AD moved with her boyfriend CL to an apartment complex located in Berea, Ohio. At that time, both of them had been charged in a drug case; AD wanted to "start over"[2] at a new place. They shared the apartment with another young man, EJ, with whom they both worked. AD also made acquaintance over time with other residents in the complex, including appellant and his girlfriend, Heather. AD eventually viewed appellant as a friend, but CL and appellant became antagonistic toward each other after an altercation occurred between them.

---

[1]In accordance with this court's policy of protecting the privacy of sexual assault victims, she and her immediate family members will be referred to by initials.

[2]Quotes indicate testimony given at trial.

{¶ 6} In May 2008, AD applied in her criminal case for the "Early Intervention Program" ("EIP"). She understood she could no longer use drugs after she made her application. Subsequently, she learned she was pregnant; this development made her more determined to forgo substances that might harm her baby.

{¶ 7} However, AD missed a pretrial hearing scheduled for July 23, 2008, and became aware that a warrant had been issued for her arrest. She asked her attorney to intercede with the court on her behalf about the situation and waited to hear whether he was successful.

{¶ 8} On the night of July 30, 2008, AD and CL had an argument. The argument remained unresolved as CL left the apartment to seek medical treatment for a back problem. AD decided the two of them needed a "cooling off" period, so at approximately 10:00 p.m. she also left the apartment, proceeding to appellant's unit.

{¶ 9} Appellant and Heather welcomed AD. After hearing AD's explanation for her visit, appellant told her she could sleep on one of their couches if she wanted to. AD sat down with them to watch television. As the evening passed, AD observed appellant and Heather "were drinking," but she did not want to be "tempted by anything." Thus, although Heather ingested a "yellow pill" that appellant offered, AD surreptitiously "went into

the bathroom" with the one appellant provided to her and "flushed it down the toilet" instead of taking it. Appellant told AD the pill would help her "feel more comfortable," and AD did not want to hurt his feelings by rejecting it outright. AD eventually fell asleep on the couch.

{¶ 10} Sometime later, AD awoke to find her "bra had been pulled up and [appellant's] fingers were in [her] vagina and he was leaning over the side of the couch." Appellant was "groping" one of her breasts with one hand, while his other was "[d]own [her] pants," inside her underwear. AD was "stunned" at the discovery, and asked appellant "what he was doing." Appellant seemed "shocked" to find her awake; he answered that he was "just rubbing" her.

{¶ 11} AD arose from the couch, rearranged her clothing, and moved toward the front door; her aim was to get herself "out and away from the situation without further being harmed." Appellant moved in front of her to block the door. He reassured her that "everything's okay," and that she still could sleep there. AD told him she had to leave, reaching her hand toward the door. In the face of her insistence, appellant stood aside, but preceded her down the stairway. Although he repeated that she could remain, AD fled home.

{¶ 12} AD reported what occurred to CL before he could enter the building; he described her demeanor as "a wreck." Although AD's experience made CL angry enough to try to confront appellant, CL received no answer when he "pounded" on appellant's door. Moreover, CL and AD agreed that she should not report the incident because of her outstanding arrest warrant.

{¶ 13} On September 9, 2008, however, the incident came to light. Berea police detective Dennis Bort arrived at the apartment building investigating a theft report, and received information that led him to seek an interview with CL. After CL spoke to Bort, CL asked if another crime could be reported.

{¶ 14} Bort spoke with AD as a result of CL's inquiry, thus commencing an investigation of the sexual assault. AD provided an oral and a written statement. She also agreed to meet with appellant and to wear a "wire" in order to record their conversation. In talking about the incident with AD, appellant told her he did not remember doing anything to her, but if he did, he was "sorry."

{¶ 15} Bort subsequently interviewed appellant and attempted to speak to Heather. Appellant denied both committing the offenses and apologizing to AD. Heather appeared "sluggish" and "maybe a little hung over"; she "declined to talk" at that time. Although appellant later indicated to Bort

that Heather might be available for a further interview, appellant never followed up on this possiblity.

{¶ 16} On February 12, 2009, appellant was indicted in this case on four counts. Counts 1 and 2 charged him with rape in violation of both R.C. 2907.02(A)(2) and (A)(1)(c), Count 3 charged him with kidnapping with a sexual motivation specification, and Count 4 charged him with GSI. Appellant retained counsel to represent him.

{¶ 17} The case originally was scheduled for trial on June 8, 2009. The record reflects that the prosecutor filed her witness list on April 20, 2009; one of the names on the list was "Miranda Vermes [sic]." Trial had to be continued for various reasons thereafter, however; eventually, trial was scheduled for March 22, 2010.

{¶ 18} On that date, the trial court noted on the record that defense counsel raised an issue of a possible conflict in his representation of appellant. Defense counsel explained under oath that a woman named "Mrs. Davis" had approached him to represent her daughter in an unrelated case, and that he had conducted one meeting with her and her daughter to discuss the matter.

{¶ 19} Defense counsel further stated that it was not until March 19, 2010, upon noticing the name "Miranda Bermes" on the state's subpoena list,

that he became aware that the prosecutor intended to call his new client's daughter as a witness at appellant's trial. Defense counsel assured the court that nothing about appellant's case had been mentioned in his meeting with Davis and Bermes.

{¶ 20} In discussing the matter with defense counsel, the trial court ordered counsel to withdraw from Bermes's representation and abjured him from utilizing any information he had gained from Bermes in his cross-examination of her. Defense counsel pledged to comply with those directives. Appellant had no objection to defense counsel's continued representation. The case proceeded to trial.

{¶ 21} The state presented the testimony of AD, her mother, CL, Bermes, and Bort. After the trial court denied his Crim.R. 29 motion for acquittal, appellant testified in his own behalf. He also presented the testimony of his friend Herbert Ebner. Appellant denied committing the offenses, and asserted that CL put AD up to making the allegations as a way to extort money from appellant. Ebner indicated that on one occasion, he witnessed CL "yelling at" appellant.

{¶ 22} The jury ultimately found appellant guilty on all counts. At sentencing, the prosecutor acknowledged that Counts 1, 2, and 3 were allied offenses pursuant to R.C. 2941.25(A), and left it "up to the court" to choose

the one on which to impose sentence. The trial court merged Counts 2 and 3 into Count 1, and imposed concurrent terms of five years on Count 1 and one year on Count 4. The trial court also classified appellant as a "Tier III" sexual offender.

{¶ 23} Appellant appeals from his convictions with three assignments of error.

{¶ 24} "I. The appellant was denied his constitutional right of due process based upon ineffective assistance of counsel.

{¶ 25} "II. The trial court improperly denied the admission of relevant testimony in contravention of appellant's right to due process.

{¶ 26} "III. The convictions of the appellant were against the manifest weight of the evidence and the evidence was insufficient as a matter of law."

{¶ 27} In his first assignment of error, he claims his retained attorney provided such ineffective assistance as to deny his constitutional rights. Appellant contends that because counsel failed to realize Bermes was a state's witness, he did not adequately prepare for trial, because counsel failed to object to the prosecutor's question to Bort about whether appellant "made any efforts to bring [Heather] down to the station to talk to" Bort, counsel did

not protect appellant's right to remain silent, and because counsel was unable to introduce evidence of CL's specific threats to appellant, counsel did not provide appellant a full defense.

{¶ 28} A reviewing court will not deem counsel's performance ineffective unless a defendant can show both that counsel's performance fell below an objective standard of reasonable representation and that prejudice arose from the deficient performance. *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, paragraph one of the syllabus.

{¶ 29} In order to show prejudice, a defendant must prove that, but for counsel's errors, a reasonable probability exists that the trial result would have been different. Id. at paragraph two of the syllabus. Judicial scrutiny of a lawyer's performance must be highly deferential. *State v. Moon*, Cuyahoga App. No. 93673, 2010-Ohio-4483, citing *State v. Sallie*, 81 Ohio St.3d 673, 1998-Ohio-343, 693 N.E.2d 267. This court will not second-guess matters of trial strategy. *State v. Clayton* (1980), 62 Ohio St.2d 45, 402 N.E.2d 1189, certiorari denied *Clayton v. Ohio* (1980), 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102.

{¶ 30} The record of this case fails to support a conclusion that appellant's defense counsel was unprepared for trial. Defense counsel took part in many pretrial hearings during the thirteen months that the case was

pending. The prosecutor misspelled Bermes's name in her original response to the defense request for discovery, and counsel found the error when sending out subpoenas for potential defense witnesses. When the trial court asked appellant on the day of trial if he had any reservations about counsel's representation, appellant expressed confidence in his attorney.

{¶ 31} Similarly, counsel's failure to object to the prosecutor's final questions of Bort during direct examination does not support a conclusion that counsel's omission was unintended. Counsel reasonably could have concluded the jury would understand appellant had no control over Heather's actions. *State v. Tibbetts*, 92 Ohio St.3d 146, 165-167, 2001-Ohio-132, 749 N.E.2d 226.

{¶ 32} Finally, a review of defense counsel's performance demonstrates he effectively established the animosity CL held toward appellant; CL showed his attitude in his answers during cross-examination. Moreover, counsel's questions of appellant during direct examination clearly brought forward the theory of the defense. Counsel's strategy may have proved unsuccessful, but this fact, in itself, does not establish ineffective assistance. Id.

{¶ 33} Accordingly, appellant's first assignment of error is overruled.

{¶ 34} Appellant next asserts the trial court made errors in making rulings on evidentiary matters. Appellant argues the trial court should have

permitted: 1) Bermes to give her opinion on the truthfulness of AD's allegations against appellant; 2) CL to testify about AD's previous abortion; and 3) Ebner to testify about specific threats CL made against him. Appellant further contends the trial court should have foreclosed both testimony about AD's statements made directly after the incident, and the prosecutor's question of Bort as to whether appellant ever brought Heather to the police station.

{¶ 35} A trial court has broad discretion in the admission or exclusion of evidence. *State v. Sage* (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus. Thus, a trial court's ruling on the admissibility of evidence will be upheld unless the record demonstrates an abuse of discretion that caused material prejudice. *State v. Martin* (1985), 19 Ohio St.3d 122, 129, 483 N.E.2d 1157. A review of the record in this case fails to demonstrate the trial court abused its discretion.

{¶ 36} The trial court refused to permit Bermes to give her opinion about the truthfulness of AD's allegations because Bermes gave her opinion during an interview with counsel that, at the time, was protected by attorney-client privilege. The trial court simply held defense counsel to his promise to refrain from questioning Bermes on such matters.

**{¶ 37}** As to CL's attempt to comment on AD's earlier pregnancy, such testimony would have been gratuitous and irrelevant; therefore, the trial court properly excluded it. Evid.R. 402. Similarly, the trial court appropriately refused to permit Ebner to provide hearsay evidence prohibited by Evid.R. 801(C). Since appellant's testimony established a possible motive for CL and AD to bring false allegations against him, moreover, he cannot demonstrate any material prejudice resulted from the trial court's decisions.

**{¶ 38}** A review of CL's testimony about statements AD made to him about her experience directly after it occurred demonstrates the testimony was admissible pursuant to Evid.R. 803(2). At any event, since AD herself testified, appellant's defense counsel was able to subject her to a thorough cross-examination.

**{¶ 39}** Finally, as appellant has previously argued in his first assignment of error, defense counsel never objected to the prosecutor's final questions of Bort during direct examination. The trial court, moreover, was not obligated to exclude Bort's answers, especially under these circumstances. Bort's testimony described the course of his investigation; it cannot fairly be construed to constitute a comment on appellant's right to remain silent. See, e.g., *State v. Craig*, Cuyahoga App. No. 94455, 2011-Ohio-206, ¶17.

{¶ 40} Appellant's second assignment of error, accordingly, also is overruled.

{¶ 41} Appellant argues in his third assignment of error that his convictions are not supported by either sufficient evidence or the manifest weight of the evidence.   This court disagrees.

{¶ 42} In reviewing a challenge based upon sufficiency, this court must examine the evidence presented at trial to determine whether, if believed, the evidence would convince the average mind of the accused's guilt beyond a reasonable doubt.   *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. The evidence must be viewed in the light most favorable to the prosecution. *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 485 N.E.2d 717. Sufficiency is a question of law; the trial court determines whether the state has met its burden to produce evidence on each element of the crime charged.  Id.

{¶ 43} In considering a challenge to the manifest weight of the evidence, the reviewing court examines the entire record, weighs the evidence and all reasonable inferences, and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed.   *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶81.   The

discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541. Moreover, this court must remain mindful that the weight of the evidence and the credibility of the witnesses are matters primarily for the jury to assess. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.

**{¶ 44}** Appellant was convicted of rape, in violation of both R.C. 2907.02(A)(1)(c) and (2); those provisions state in pertinent part:

**{¶ 45}** "(A)(1)   No person shall engage in sexual conduct with another who is not the spouse of the offender * * * , when any of the following applies:

**{¶ 46}** "(c)   The other's ability to resist or consent is substantially impaired because of a * * * physical condition * * * , and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a * * * physical condition * * * .

**{¶ 47}** " * * *

**{¶ 48}** "(2)   No person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 49} Appellant also was convicted of kidnapping, in violation of R.C. 2905.01, which states in pertinent part:

{¶ 50} "(A)   No person, by force, * * * shall * * * restrain the liberty of [an]other person, for any of the following purposes:

{¶ 51} "(4)   To engage in sexual activity * * * with the victim against the victim's will."

{¶ 52} Finally, the jury convicted appellant of gross sexual imposition, in violation of R.C. 2907.05, which states in pertinent part:

{¶ 53} "(A)   No person shall have sexual contact with another, not the spouse of the offender; * * * when any of the following applies:

{¶ 54} "(1)   The offender purposely compels the other person * * * to submit by force or threat of force."

{¶ 55} The state presented the jury with sufficient evidence to prove appellant committed each of the foregoing offenses.   AD testified that even though she was a very "heavy" sleeper, she awoke to find appellant fondling one of her breasts with one hand while two fingers of his other hand were inside her vagina.   Her clothing had been pushed aside, and appellant was "leaning over" her.   AD stated she was "shocked" by appellant's actions and she initially was "paralyzed."    She further testified she was afraid he might do more harm to her if she did not act in a relatively calm manner.

{¶ 56} AD also testified that after she got up and rearranged her clothing, appellant saw her move toward the apartment door, so he placed himself in front of it. Appellant tried to prevent her from leaving his apartment until he realized she was insistent.

{¶ 57} AD gave a compelling description of the incident and its surrounding circumstances. Her testimony found corroboration in CL's observations of her demeanor immediately after the incident, and in AD's mother's assessment of AD's reaction to her ordeal. Indeed, the state's witnesses presented a logical, coherent account.

{¶ 58} Appellant's story, on the other hand, strained credulity in light of his admissions. Furthermore, Ebner added little to appellant's defense.

{¶ 59} Consequently, appellant's convictions are supported by both sufficient evidence and the manifest weight of the evidence. *State v. Jackson*, Cuyahoga App. No. 93235, 2010-Ohio-3716. His third assignment of error also is overruled.

Appellant's convictions are affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

KENNETH A. ROCCO, JUDGE

MARY EILEEN KILBANE, A.J., and
PATRICIA ANN BLACKMON, J., CONCUR