THE STATE OF OHIO, APPELLEE, *v.* MARTIN, APPELLANT.

[Cite as State *v.* Martin (1985), 19 Ohio St. 3d 122.]

(No. 84-1660—Decided August 9, 1985.)

*John T. Corrigan,* prosecuting attorney, and *Carmen Marino,* for appellee.

*Thomas M. Keane,* for appellant.

*Per Curiam.* In order to determine whether the appellant's death sentence should be affirmed, this court is required to do three things. First, we must answer the specific issues raised by the appellant regarding the proceedings below. Second, we must independently weigh the aggravating circumstances in this case against any factors which mitigate against the imposition of the death penalty. Finally, we must independently consider whether appellant's sentence is disproportionate to the penalty in similar cases.

Appellant alleges that the trial court wrongfully excluded four prospective jurors on the basis of their underlying beliefs regarding the death penalty rather than their inability to follow the law or obey the court's instructions. He directs the court's attention to *Witherspoon* v. *Illinois* (1968), 391 U.S. 510 [46 O.O.2d 368], wherein the Supreme Court held that the death sentence could not be carried out if the jury that imposed or recommended the sentence excluded veniremen for cause on the grounds that they voiced general objections to the death penalty or expressed conscientious or religious scruples against its infliction.

Appellant asserts that four jurors were successfully excluded for cause when none of them met the criteria of exclusion set forth in *Witherspoon.* A careful review of the *voir dire* record serves to establish that each of the four excluded jurors either could not or would not consider the imposition of a sentence of death in a particular case. Pursuant to R.C. 2945.25(C), jurors who harbor such convictions may be challenged for cause. Accordingly, appellant's assignment of error concerning the exclusion of jurors was properly overruled by the appellate court.[1]

---

[1] The following testimony was elicited from each of the excluded jurors during *voir dire,* the first being that of prospective juror Melvin Cobe:

"Q. * * * [THE COURT:] Now, the Court, Mr. Cobe, will give the jury certain instructions of law, jury instructions, and as to a juror taking an oath, and you are duty bound, according to your oath to follow the law as given to you by the Court.

"You are to apply that law to the facts as you find them to be, after fully deliberating with other jurors, and would the fact that you have a scruple, or the fact that you do not believe in capital punishment, would that fact cause you to adamantly refuse to vote for a verdict of guilty in a case, even though you may be convinced beyond a reasonable doubt that the evidence justifies a verdict of guilty?

"A. [MR. COBE:] Yes.

"* * *

"Q. [THE COURT:] You believe that your scruples against capital punishment would prevent you in participating in a guilty verdict?

"A. [MR. COBE:] Yes.

"Q. [THE COURT:] Even if the evidence, and the law supported that type of verdict, is that correct?

"A. [MR. COBE:] Yes.

"* * *

"THE COURT: * * * Are you saying that you would automatically, regardless of the

Appellant next challenges the trial court's denial of a motion to separate the aggravated robbery count arising from the incident involving the gun taken from Ernel Foster and the counts of aggravated robbery and aggravated murder with specifications involving the death of Robert Robinson.

Crim. R. 8 permits joinder of separate offenses only where the offenses charged "are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct." Crim. R. 14 further permits a

---

evidence, and regardless of the facts presented at trial, vote against the imposition of capital punishment?

"MR. COBE: Yes."

The court then questioned prospective juror Jacquelin Skrzypek, as follows:

"Q. [THE COURT:] And then that would give you no trouble with your beliefs about capital punishment, however, if after such a hearing, the jury is unable to find that there are mitigating circumstances justifying the defendant being removed from the possible, the penalty of the potential death sentence, can you set aside your opinion relative to capital punishment, and accept the instruction of law of the Court, and follow the evidence as it's presented, or will you insist upon asserting your own opinion on the subject?

"A. [MRS. SKRZYPEK:] In all conscience, I would say I possibly wouldn't go along with that.

"* * *

"Q. * * * [THE COURT:] Mrs. Skrzypek, are you saying that you would automatically, regardless of the evidence and regardless of the facts presented at trial, or at a separate penalty hearing that you would vote against the imposition of capital punishment regardless of whatever evidence and facts were presented?

"A. [MRS. SKRZYPEK:] Yes. Personally, I could not sanction or vote for the death penalty.

"THE COURT: Under any circumstances?

"A. [MRS. SKRZYPEK:] No, I think it would really bother my conscience.

"Q. [THE COURT:] Under any circumstances?

"A. [MRS. SKRZYPEK:] Yes."

The next juror questioned was Sherry Vales, as follows:

"Q. * * * [THE COURT:] Even though you are against it, you hear the law of the case, and if you find a person guilty, can you vote for a verdict in which the death penalty may be applied, even though you are against capital punishment?

"A. [MS. VALES:] I don't think I can."

Defense counsel attempted to rehabilitate Vales as a juror, but failed to object when the court granted the state's challenge for cause. Hence, any error was waived. See State v. Laskey (1970), 21 Ohio St. 2d 187 [50 O.O.2d 432].

The final juror questioned was Betsy Brzozowski, whose voir dire testimony was as follows:

"Q. [THE COURT:] Now, can you go into such a hearing with an open mind and consider all the evidence in the case, and the law given to you by the Court, and make a decision as to whether or not to recommend the death penalty and vote either way on the issue, dependent upon what the law and the evidence is? Can you do that notwithstanding your personal feelings?

"A. [MS. BRZOZOWSKI:] I don't think I could. I'm being very honest, and I have been wrestling this over with myself."

defendant to move for separation of the offenses if it is evident that he is prejudiced by the joinder of such offenses.

However, in *State* v. *Watson* (1971), 28 Ohio St. 2d 15 [57 O.O.2d 95], this court reasoned that in situations in which the state is required to show possession of a murder weapon by the defendant to establish its case, it is permissible to allow into evidence proof of other criminal acts committed by the defendant which tend to establish possession, even though such evidence incidentally tends to prove commission of crimes other than the one with which the defendant is charged. Pursuant to this authority all of the evidence concerning the theft of Foster's weapon was admissible as relevant, even if the trial court had severed the contested aggravated robbery count.

In *State* v. *Torres* (1981), 66 Ohio St. 2d 340 [20 O.O.3d 313], this court concluded that a defendant claiming error arising from the trial court's refusal to separate trials of multiple charges under Crim. R. 14 has the burden of affirmatively showing that his rights were prejudiced. In the present case the evidence concerning the theft of Foster's weapon was properly admissible under the authority of *Watson, supra,* even if the court had granted appellant's motion to separate the contested counts. Accordingly, it appears that appellant has failed to satisfy his burden of affirmatively demonstrating that his rights were in any way prejudiced through the joinder of the two counts.

Appellant next alleges that the trial court erroneously failed to suppress the eyewitness identification of appellant by Foster. Appellant grounds this allegation on the premise that a defendant in a death penalty case has a right to assistance of counsel at a police line-up even before formal proceedings have been initiated against him.

In support, appellant cites *United States* v. *Wade* (1967), 388 U.S. 218; *Gilbert* v. *California* (1967), 388 U.S. 263; and *Kirby* v. *Illinois* (1972), 406 U.S. 682. However, an examination of these cases reveals that they stand for the proposition that a post-indictment line-up is a critical stage at which an accused is entitled to the aid of counsel. Further, the *Kirby* opinion specifically found that a show-up after an arrest, but before the initiation of any adversary criminal proceedings, unlike the post-indictment confrontation of *Gilbert* and *Wade,* is not a criminal prosecution at which the accused, as a matter of right, is entitled to the presence of counsel. Therefore, the appellate court properly found this assigned error to be without merit.

Appellant next contests the admission into evidence of the letter written to Pedro dated February 22, 1981, in which he requested her to implicate someone else for the commission of a previous, unrelated offense for which the appellant was charged. This letter also outlined questions which Pedro should expect and how to answer them.

Appellant first alleges that the admission of this letter violates Crim. R. 16(B) and 16(E)(3), which require disclosure of certain evidence used by

the prosecuting attorney to the defense. In accordance with the discovery motion, defense counsel had been presented with the two letters written by appellant to Pedro dated in February 1983. However, defense counsel was not made aware of the February 22, 1981 letter until trial.

The state points out that the prosecutor represented that he did not learn of the existence of this letter until the morning of Pedro's second day of testimony. He then promptly informed the court and defense counsel of this development. By so acting, the prosecutor complied with the terms of Crim. R. 16(D), requiring a continuing duty of disclosure.

In addition, the court acted to minimize any disadvantage to defense counsel by permitting counsel to secure a handwriting analyst to determine the letter's authenticity. It should also be noted that the defense counsel made no request for a continuance to further investigate the matter.

Appellant further contends that the admission of this letter was in violation of Evid. R. 404(B), which prohibits the introduction of evidence which tends to show that the accused is of the character of one who would commit the crime for which he is now charged. He also charges, that even if admissible, the letter should have been excluded as irrelevant pursuant to Evid. R. 403(A) because any possible probative value was substantially outweighed by the danger of unfair prejudice to the defendant.

We are, however, persuaded that the February 22, 1981 letter is admissible under the exception denoted in Evid. R. 404(B) which allows the admission of this letter, along with the two subsequent letters, in that they tend to show the appellant's common scheme or plan of inducing Pedro to lie for him after he was charged with the commission of a crime. This court held in *State* v. *Hector* (1969), 19 Ohio St. 2d 167 [48 O.O.2d 199], that evidence of a prior act may be admissible to prove identity or motive, not because the prior acts prove that the defendant is crime prone, but in spite of such fact, on the theory that the circumstances involved in the prior offense comprise substantial probative evidence of guilt of the particular offense in question. In the case at bar the contested letter illustrates how appellant induced Pedro to implicate another for the commission of a crime with which appellant was charged. In the two subsequent letters written by the appellant, he again asked Pedro to implicate another for the murder of Robinson. The defense did not object to either of the 1983 letters being read to the jury. The admission of the February 22, 1981 letter not only corroborated the two letters written in 1983, but also showed the jury the motive, scheme, intent and calculated effort of the appellant to lie and to persuade Pedro to lie.

Finally, it should be noted that the contested letter was not particularly essential to the state's case, but cumulative in nature. There is some authority which holds that the admission of some incompetent evidence does not necessarily require reversal of a conviction, where the competent and admissible evidence in the case clearly establishes the accused's guilt

beyond a reasonable doubt. See *State* v. *Lewis* (1970), 22 Ohio St. 2d 125 [51 O.O.2d 209]; *Walker* v. *State* (1930), 37 Ohio App. 540.

Appellant next accuses the trial court of various erroneous evidentiary rulings during the trial. In order for appellant to succeed on this proposition, he must show that the trial court abused its discretion in the admission or exclusion of the evidence in question, and that the appellant has been materially prejudiced thereby. See *State* v. *Hymore* (1967), 9 Ohio St. 2d 122 [38 O.O.2d 298].

Appellant's first allegation of error on the part of the trial court concerning the admissibility of evidence relates to the coroner's pictures depicting the body of Robinson. The pictures were admitted to the jury for their review and appellant claims that they were prejudicial and inflammatory in nature. In *State* v. *Maurer* (1984), 15 Ohio St. 3d 239, paragraph seven of the syllabus, this court held that, "[p]roperly authenticated photographs, even if gruesome, are admissible in a capital prosecution if relevant and of probative value in assisting the trier of fact to determine the issues or are illustrative of testimony and other evidence, as long as the danger of material prejudice to a defendant is outweighed by their probative value and the photographs are not repetitive or cumulative in number." A review of the record establishes the pictures were instructive and beneficial to the jury's understanding of what wounds were inflicted and the proximity of the weapon to the decedent's body which would support the cause of death. As such, the trial court did not abuse its discretion in admitting this evidence. See, also, *State* v. *Woodards* (1966), 6 Ohio St. 2d 14 [35 O.O.2d 8].

Next, appellant asserts that the admission of the bullets removed from the victim's body misled the jury to believing the appellant had obtained Foster's weapon and used it to kill Robinson. The bullets were clearly admissible as probative of the type of weapon used to kill Robinson and that they came from the weapon which appellant robbed from the security guard. The evidentiary link between Foster's gun and the murder weapon was amply supplied through other testimony of Pedro. Hence, this claim is invalid.

Appellant also challenges the introduction of the envelope box which contained the slightly altered serial number of Foster's gun, the tennis shoes and pants allegedly worn by appellant when the murder occurred, and a line-up photo. He asserts such evidence is immaterial and irrelevant to the issues before the court.

Evid. R. 401 defines "relevant evidence" as:

"[E]vidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The envelope box containing the altered serial number of Foster's gun is clearly relevant in establishing appellant's possession of the weapon. The tennis shoes and pants were relevant in that Pedro identified them as

the clothes worn by the appellant when he shot Robinson and as the same clothes which she later gave to the police. The line-up photo was relevant as it depicted appellant with his hair in small braids. This is one of the identifying characteristics which Foster had noticed when chasing the man who had stolen his weapon. In addition, appellant has failed to substantiate that the introduction of any of these pieces of evidence materially prejudiced his defense. *Hymore, supra.*

Finally, appellant contends that the trial court improperly excluded prior recorded statements of Pedro and Henderson which were allegedly inconsistent with their trial testimony. First, it must be noted that both the trial court and the reviewing appellate court found that there were no substantial inconsistencies between these statements and what the witnesses testified to at trial. Neither statement was utilized by either party during the examination of these witnesses. Furthermore, the trial court gave defense counsel the opportunity to recall Pedro as a witness and re-examine her on any alleged inconsistencies. The defense counsel declined to do so. Again appellant has failed to establish any material prejudice to his defense by the exclusion of these statements. *Hymore, supra.*

Appellant next proposes that the trial court erred in not sustaining his motion for acquittal on the grounds that the evidence was insufficient to convict him as a matter of law. In *State* v. *Bridgeman* (1978), 55 Ohio St. 2d 261 [9 O.O.3d 401], this court established the standard for reviewing a motion for acquittal holding, "a court shall not order an entry of judgment of acquittal [pursuant to Crim. R. 29(A)] if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of the crime has been proved beyond a reasonable doubt." Pursuant to the evidence adduced at trial this court finds that reasonable minds could reach different conclusions as to whether each material element of the aggravated murder had been proved beyond a reasonable doubt. Accordingly, the trial court was justified in overruling appellant's motion for acquittal, pursuant to Crim. R. 29(A).

Appellant also asserts that the evidence was insufficient as a matter of law for the imposition of the death penalty. R.C. 2929.05(A) mandates that this court conduct an independent review of the facts and other evidence to determine whether they support the finding of the aggravating circumstances and whether the aggravating circumstances of which the defendant is guilty outweigh the mitigating factors in the case.

We find that the evidence supports the trial court's finding that appellant was guilty of the aggravating circumstances of being the principal offender in the aggravated murder of Robert Robinson and of committing the aggravated murder while committing or attempting to commit aggravated robbery. The testimony of Foster and Pedro places Foster's stolen weapon, a .38 caliber revolver, in the hands of the appellant when Robinson was shot. This was one of the weapons which an expert for the state testified was capable of firing the bullets found in Robinson's body.

The testimony of Pedro and Henderson established that the appellant had planned to rob Robinson. Pedro further detailed how appellant fulfilled this plan to the point where he fired two shots through the door fatally wounding Robinson. This evidence is sufficient to support a finding that the appellant was the principal actor in the murder of Robinson while in the midst of committing or attempting to commit aggravated robbery.

Next this court must independently weigh the aggravating circumstances against any mitigating factors. The aggravating circumstances are that the appellant acted upon a preconceived plan to rob Robinson while carrying a loaded .38 caliber revolver. After Robinson closed the door before appellant could get inside, appellant fired two shots through the door, estimated to be less than two feet away. Further, the evidence establishes that appellant returned to the store after changing his clothes and was able to steal $38 or $39 dollars from Robinson.

Evidence in favor of mitigation was elicited from appellant's mother and grandmother. Appellant was the son of Ernest Wilkins and Frances Martin. His mother and father were never married. His father left his mother when appellant was four years old. The father never contributed anything to appellant's emotional or financial support.

Appellant had difficulty in school, difficulty getting along with other children, and was placed in a detention home five times in his youth for various offenses. At age sixteen, he spent five months in the Fairfield Reformatory. As an adult, appellant was a multiple offender who had been convicted of assault and receiving stolen property, carrying a concealed weapon, and the aggravated robbery in 1982 of Ernel Foster.

None of the above-mentioned factors exemplifies the mitigating factors set forth in R.C. 2929.04.[2] Accordingly, it is apparent that the ag-

---

[2] The R.C. 2929.04 criteria for imposing death or imprisonment for a capital offense are as follows:

"(B)   If one or more of the aggravating circumstances listed in division (A) of this section is specified in the indictment or count in the indictment and proved beyond a reasonable doubt, and if the offender did not raise the matter of age pursuant to section 2929.023 of the Revised Code or if the offender, after raising the matter of age, was found at trial to have been eighteen years of age or older at the time of the commission of the offense, the court, trial jury, or panel of three judges shall consider, and weigh against the aggravating circumstances proved beyond a reasonable doubt, the nature and circumstances of the offense, the history, character, and background of the offender, and all of the following factors:

"(1)   Whether the victim of the offense induced or facilitated it;

"(2)   Whether it is unlikely that the offense would have been committed, but for the fact that the offender was under duress, coercion, or strong provocation;

"(3)   Whether, at the time of the committing the offense, the offender, because of a mental disease or defect, lacked substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law;

"(4)   The youth of the offender;

"(5)   The offender's lack of a significant history of prior criminal convictions and delinquency adjudications;

"(6)   If the offender was a participant in the offense but not the principal offender, the

gravating circumstances of this case outweigh the various factors depicting appellant's obviously deprived and underprivileged childhood beyond a reasonable doubt.

Next, appellant contends that the trial court failed to timely file a separate opinion of its findings regarding the balancing of the aggravating circumstances against any mitigating factors within the requisite fifteen-day period after imposing the death sentence pursuant to R.C. 2929.03(F). Appellant was sentenced to death by the trial court on July 8, 1983; however, the court did not file its requisite separate findings concerning the mitigation considerations until May 23, 1984, two weeks after the court ruled on appellant's motion for a new trial. This procedural delay is alleged to have deprived appellant of due process of law and subjected him to cruel and unusual punishment.

The state asserts that the reason for this delay was that the appellant filed a motion for a new trial on July 13, 1983. The hearing on that motion was delayed due to scheduling conflicts. It is argued that final judgment could not be entered until this motion had been ruled upon. The law does not support such a proposition. This court has held that a motion for a new trial does not as a matter of law suspend the final judgment or sentence during the period that the motion is pending. See *Dowell* v. *Maxwell* (1963), 174 Ohio St. 289 [22 O.O.2d 343].

The state also argues that the delay in filing the requisite findings did not cause appellant undue prejudice nor constitute cruel and unusual punishment. We acknowledge that R.C. 2929.03(F) specifically requires the trial court to file within fifteen days after imposition of the death sentence a separate opinion outlining its mitigation findings. We are also cognizant that the trial court's sentencing entry does not conform to the requirements of R.C. 2929.03(F). Nevertheless, we agree with the appellate court's finding that the trial court's July 8, 1983 sentencing not only set out the judgment, but also addressed the mitigating factors. In order for a judgment to be reversed on the basis of a technical error, such error must be prejudicial to the rights of the accused. R.C. 2945.83; *State* v. *Carter* (1970), 21 Ohio St. 2d 212, 213 [50 O.O.2d 446]; *State* v. *Huffman* (1936), 131 Ohio St. 27, 35-36 [5 O.O. 325]. The trial court's delay in filing these mitigation findings did not adversely affect appellant's motion for a new trial as this motion was filed only five days after the trial court entered its sentence. It did not prejudice appellant's rights on appeal where the trial court filed the requisite findings shortly after it ruled on appellant's motion for new trial. Finally, it did not constitute cruel and unusual punishment, for appellant was imprisoned pursuant to the trial

degree of the offender's participation in the offense and the degree of the offender's participation in the acts that led to the death of the victim;

"(7) Any other factors that are relevant to the issue of whether the offender should be sentenced to death."

court's sentence, not pursuant to its separate findings concerning its consideration of the mitigation factors. Hence, the trial court's procedural delay is not of the magnitude to constitute prejudicial error, thereby compelling this court to reverse its judgment.

Appellant next asserts several propositions of law attacking the constitutionality of the Ohio death sentence. First, appellant contends that the aggravating circumstances of felony murder simply duplicate an element of the felony when a murder by prior calculation and design requires a proof of separate aggravating circumstances in order to justify the imposition of a death sentence. Second, appellant insists that the Ohio bifurcated trial procedure denies a defendant effective assistance of counsel on the basis that the defendant's counsel loses credibility during the guilt-innocence phase of the trial thereby prejudicing the defendant's rights during the sentencing phase. Next, appellant asserts that the Ohio death penalty constitutes cruel and unusual punishment. Finally, appellant states that the Ohio death penalty violates due process because the state has no compelling interest to justify the death sentence when there are less restrictive measures available. All of these constitutional assignments of error were fully addressed and rejected in the recent opinions of this court in *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, and *State* v. *Maurer* (1984), 15 Ohio St. 3d 239. Therefore, this court rejects these arguments.

Finally, this court must determine whether the sentence of death imposed in this case is disproportionate to sentences imposed in similar crimes. In view of the lack of any mitigating factors in this case, the death sentence imposed in this case is not disproportionate to similar sentences imposed in *State* v. *Jenkins, supra; State* v. *Maurer, supra; State* v. *Rogers* (1985), 17 Ohio St. 3d 174; and *State* v. *Mapes* (1985), 19 Ohio St. 3d 108.

In conclusion, we first find that there is no merit to any of the specific issues raised by the appellant concerning the jury trial resulting in his conviction of the crimes described. Second, we find that the aggravating circumstances outweigh any and all mitigating factors attempted to be presented by the appellant. Third, we find the sentence of death to be appropriate in this case, as it is neither excessive nor disproportionate to the penalty imposed in similar cases. Thus, in accordance with R.C. 2929.05(A), we affirm the conviction and sentence of death in this case.

Accordingly, the judgment of the court of appeals is affirmed.

*Judgment affirmed.*

CELEBREZZE, C.J., SWEENEY, LOCHER, HOLMES, C. BROWN and DOUGLAS, JJ., concur.

WRIGHT, J., concurs in judgment only.