[Cite as *In re P.T.*, 2012-Ohio-4034.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

IN THE MATTER OF:

JUDGES:
Hon. W. Scott Gwin, P. J.
Hon. John W. Wise, J.
Hon. Julie A. Edwards, J.

P.T.

Case No. 2012 AP 02 0009

ALLEGED DEPENDENT CHILD

O P I N I O N

CHARACTER OF PROCEEDING:

Civil Appeal from the Court of
Common Pleas, Juvenile Division,
Case No.  2011 JN 00470

JUDGMENT:

Affirmed

DATE OF JUDGMENT ENTRY:

August 31, 2012

APPEARANCES:

For Appellants

For Appellee

DEREK LOWRY
CRAWFORD, LOWRY & ASSOCIATES
116 Cleveland Avenue NW
Suite 800
Canton, Ohio  44702-1732

*Wise, J.*

{¶1}    Appellants Lewis and Nancy Stratton appeal the decision of the Court of Common Pleas, Tuscarawas County, which denied their motion for custody of their great-nephew in a dependency action filed by the Tuscarawas County Department of Job and Family Services ("TCDJFS"). The relevant facts leading to this appeal are as follows.

{¶2}    The child at the center of this case is P.T., born to Hannah Tenney and an unknown father in September 2011. Appellant Nancy Stratton is the maternal aunt of Hannah, and the great aunt of P.T.

{¶3}    Hannah Tenney has previously lost custody of three of her children in TCDJFS cases. Two of these other children, both boys, are in the legal custody of Tom Brown, their paternal grandfather; the third child, a girl, was ordered into the legal custody of non-relatives Melissa and Tom Stevens.

{¶4}    At the time of P.T.'s birth, he tested positive for cocaine and THC in his system. Via an ex parte order, TCDJFS took emergency custody pursuant to Juv.R. 6, and, on September 6, 2011, filed a complaint in the trial court alleging that P.T. was a dependent child.

{¶5}    On September 29, 2011, Appellants Lewis and Nancy Stratton filed a motion to intervene and a complaint for custody. Following an adjudicatory hearing on the agency's complaint on October 5, 2011, the trial court found P.T. to be a dependent child.

{¶6} On November 1, 2011, the trial court conducted a dispositional hearing, including a redress of appellants' motion for legal custody of P.T. The child's mother, Hannah, did not appear for said hearing.

{¶7} On January 6, 2012, the trial court issued a dispositional judgment entry. Characterizing the overall evidence in the case as a "convoluted collection of information" that "dealt little with the best interest of [the] child," the court denied appellants' request for custody and ordered that the child remain in the temporary custody of TCDJFS.

{¶8} Appellants filed a notice of appeal on February 3, 2012. They herein raise the following sole Assignment of Error:

{¶9} "I. THE TRIAL COURTS DENIAL OF THE APPELLANT'S [SIC] MOTION FOR CUSTODY WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

I.

{¶10} In their sole Assignment of Error, appellants contend that the trial court's denial of their motion for custody of P.T. was against the manifest weight of the evidence. We disagree.

{¶11} R.C. 2151.353(A) states in pertinent part: "If a child is adjudicated an abused, neglected, or dependent child, the court may make any of the following orders of disposition:

{¶12} " * * *

{¶13} "(3) Award legal custody of the child to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the

child or is identified as a proposed legal custodian in a complaint or motion filed prior to the dispositional hearing by any party to the proceedings. * * *."

**{¶14}** A juvenile court's standard of review in legal custody proceedings is by the preponderance of the evidence. *In re Nice* (2001), 141 Ohio App.3d 445, 455. Some Ohio courts have recognized that "the statutory best interest test designed for the permanent custody situation may provide some 'guidance' for trial courts making legal custody decisions." *See In re A.F.,* Summit App.No. 24317, 2009–Ohio–333, ¶ 7, citing *In re T.A.,* Summit App.No. 22954, 2006–Ohio–4468, ¶ 17. These factors are set forth in R.C. 2151.414(D)(1), which requires a court to consider the following:

**{¶15}** "(a) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster care givers and out-of-home providers, and any other person who may significantly affect the child;

**{¶16}** "(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

**{¶17}** "(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period * * *;

**{¶18}** "(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

**{¶19}** "(e) Whether any of the factors in division (E)(7) to (11) of this section apply in relation to the parents and child."

**{¶20}** Furthermore, because custody issues are some of the most difficult and agonizing decisions a trial judge must make, he or she must have wide latitude in considering all the evidence and such a decision must not be reversed absent an abuse of discretion. *Davis v. Flickinger* (1997), 77 Ohio St.3d 415, 418, 674 N.E.2d 1159, citing *Miller v. Miller* (1988), 37 Ohio St.3d 71, 74, 523 N.E.2d 846. The Ohio Supreme Court has also explained: "A reviewing court should not reverse a decision simply because it holds a different opinion concerning the credibility of the witnesses and evidence submitted before the trial court. A finding of an error in law is a legitimate ground for reversal, but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal Co. v. Cleveland* (1984), 10 Ohio St.3d 77, 81, 461 N.E.2d 1273. Likewise, "[e]very reasonable presumption must be made in favor of the judgment and the findings [of the juvenile court]. * * * If the evidence is susceptible to more than one construction, we must give it that interpretation which is consistent with the verdict and judgment, and most favorable to sustaining the [juvenile] court's verdict and judgment." *In re: M.B.,* Summit App.No. 21812, 2004–Ohio–2666, ¶ 6, citing *Karches v. Cincinnati* (1988), 38 Ohio St.3d 12, 526 N.E.2d 1350. It is well established that the fact finder is free to believe all, part, or none of the testimony of each witness. *See State v. Caldwell* (1992), 79 Ohio App.3d 667, 679, 607 N.E.2d 1096. In contrast, as an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries* (February 10, 1982), Stark App.No. CA–5758.

**{¶21}** In the case sub judice, the trial court, at the dispositional hearing of November 1, 2011, had before it appellants' motion for custody of P.T., as well as the agency's request that custody of the child be granted either to Tom and Melissa Stevens or to appellants (Lewis and Nancy Stratton). See Judgment Entry, January 6, 2012, at 2. At the time of the dispositional hearing, the agency had placed the child in foster care, although not with either the Stevens family or appellants. TCDJFS trial counsel, at the beginning of the hearing, stated that "neither [the Stevens family nor appellants] are perfect, but neither of them are inappropriate either, so, um, the court has to decide, um, which of these two placements [sic] are in the best interest of this child." Tr. at 2. However, as indicated in our recitation of facts, the trial court ultimately overrode the two change of custody options presented by the agency and instead maintained the child in the temporary custody of TCDJFS. See Judgment Entry, January 6, 2012, at 2-3.

**{¶22}** The evidence before the trial court essentially consisted of (1) the testimony of TCDJFS ongoing caseworker Elizabeth Benedetto, (2) the testimony of Appellant Lewis Stratton, and (3) the written report of the guardian ad litem, Attorney Karen Dummermuth.

**{¶23}** According to Benedetto, both the Stevens family and appellants had obtained "recommended" ratings on their agency home studies. Tr. at 6. She testified that appellants' home has "plenty of room for a child" and that appellants have adequate income to care for a child. Tr. at 8. Benedetto noted that appellants have maintained a visitation arrangement with P.T.'s sister, who is in the custody of the Stevens'. *Id*. Appellants had also outlined a plan for babysitting P.T. while they were at work, utilizing

the services of Appellant Lewis' sister. Tr. at 9. Benedetto was asked if she had any concerns about placement or custody of the child with appellants, to which she responded:

**{¶24}** "Um, again, just the mere fact that there, there are no other siblings there that if, if the siblings, you know, if he was placed I can facilitate as best I can while I'm involved *but once the Agency is out of it, it's entirely up to the family when those siblings have contact,* so that would pretty much be my only concern and, again, going back to some of those reports of things, you know, I appreciate people, you know, calling and telling and reporting things, but sometimes there's just, it's a lot of he said, she said things that I can't make heads or tails of sometimes."

**{¶25}** Tr. at 11-12 (emphasis added).

**{¶26}** Nonetheless, in terms of a recommendation as to custody, Benedetto stated "*** at this point based on everything I, I guess I would have to go with Lewis and Nancy Stratton, um because they don't have Children Services [sic], there's no criminal history, there's no history of marital issues that I'm aware of, um, and, you know, they obviously have plenty, plenty of time to devote to [P.T.] as he would be the only child there ***." Tr. at 17.

**{¶27}** Appellant Lewis Stratton, husband of P.T.'s great aunt, testified and assured the trial court that he would be able to provide for the child's well-being and that he would do all he could to facilitate visitation with the child's siblings. Tr. at 45-46. However, Lewis effectively conceded that there had been communication problems between appellants and Tom Brown, who has custody of P.T.'s two brothers:

**{¶28}** "We, there was times we would call and we'd leave a message and, uh, Tom Brown would never get back with us. Uh, we'd call back and leave a message, and then there was times we would call that, uh, the number was no longer there, in service."

**{¶29}** Tr. at 47.

**{¶30}** Furthermore, although the details are not completely clear in the present record, Lewis related that he and Nancy had made a report to children services authorities in Stark County "regarding Tom Brown and the use of heroin." Tr. at 61-62.[1]

**{¶31}** Attorney Dummermuth's written GAL report noted that both the Stevens family's home and appellant's home have "a number of positive attributes" and "a number of negative attributes." GAL Report at 3. Ms. Dummermuth specifically noted:

**{¶32}** "Nancy and Lewis would very much like the opportunity to raise *a* child but the undersigned has concerns that they are motivated by this desire, not PT's best interest. Should PT be placed with Nancy and Lewis Stratton, the undersigned does not believe PT would have an ongoing relationship with his siblings due to the broken relationships between the Strattons and the rest of the family. In the previous case, Nancy and Lewis were very interested in raising all of the children, but this interest has dwindled and now there is only limited contact with the children or their caregivers. The undersigned believes that if they were truly interested in *the children,* not just custody, they would be in regular communication with someone regarding the children's welfare, regardless of the fact that they did not get custody. There is no communication throughout the week regarding milestones or activities of any of the children.

---

[1] The GAL report suggests that this report was eventually found to be unsubstantiated by Stark County DJFS. See GAL Report at 2.

**{¶33}** "Finally, it appears to the undersigned that Nancy and Lewis have a pattern of 'tattle tailing' (sic) in order to gain a perceived advantage in the court's eye. Certainly it is in the best interest of the children to report concerns, but reporting unfounded rumors suggests a motive other than the best interest of the children."

**{¶34}** GAL Report at 3-4. (emphasis in original).

**{¶35}** Appellants additionally maintain that the judgment entry contains several misstatements of fact. For example, the trial court found that appellants "do not have any contact" with P.T.'s brothers in the care of Tom Brown. Judgment Entry at para. 4. Caseworker Benedetto, however, did testify that appellants had visited with P.T.'s brothers "maybe six times." Tr. at 21. The trial court also found that "no doubt [P.T.] has bonded well with his foster parents." Judgment Entry at para. 6. However, the only significant evidence pertaining to the present foster placement was Benedetto's statements, in response to a question from the bench, that P.T. "seems to adjust pretty well" and that the placement family consists of "very nice foster parents." Tr. at 18. Additionally, the court suggested "serious drawbacks" to placement with either the Stevens family or appellants to be "issues of drug use and evidence of instability." Judgment Entry at para. 8 and 9. We agree with appellants that any evidence regarding drug use and instability was not related to their home. The court also confused the identity of one of witnesses by finding in paragraph eleven that the only potential caregiver to testify was Tom Stevens when, in fact, it was Appellant Lewis Stratton who testified. See Judgment Entry at para. 11.

**{¶36}** We note that TCDJFS has not filed a brief in response to this appeal. App.R. 18(C) states in pertinent part: "If an appellee fails to file his brief within the time

provided by this rule, or within the time as extended, the appellee will not be heard at oral argument * * * and in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

{¶37}  However, even if we were to invoke App.R. 18(C), we would not be persuaded upon review to substitute our judgment for that of the trial court in assessing the best interests of the infant child in this case. Despite the generally favorable view of appellants presented by TCDJFS and Ms. Benedetto, and notwithstanding the apparent factual misstatements set forth above, the trial court, having heard the testimony, was unable to ameliorate its concerns that unaddressed issues remained concerning appellants' ability to facilitate sibling visitation for P.T. and to overcome the tensions between the various custodians of the siblings, thus warranting the status quo maintenance of P.T. in foster placement. In such a situation, we are compelled to rely on the well-established principle that the trier of fact is in a far superior position to gauge the demeanor and credibility of the participants to the action. See *In re F.M.,* Tuscarawas App.No. 2011 AP 07 0029, 2012–Ohio–1082, ¶ 46, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.

{¶38}  We therefore hold the trial court's denial of appellants' motion for custody of P.T. at this time was not against the manifest weight of the evidence.

**{¶39}** Appellants' sole Assignment of Error is overruled.

**{¶40}** For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division, Tuscarawas County, Ohio, is hereby affirmed.


By: Wise, J.

Gwin, P. J., and

Edwards, J., concur.


_____


_____


_____

                                        JUDGES

JWW/d 0729

IN THE COURT OF APPEALS FOR TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| IN THE MATTER OF: | : | |
| --- | --- | --- |
| | : | |
| P.T. | : | JUDGMENT ENTRY |
| | : | |
| ALLEGED DEPENDENT CHILD | : | Case No. 2012 AP 02 0009 |

For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Juvenile Division, of Tuscarawas County, Ohio, is affirmed.

Costs assessed to appellants.

_____

_____

_____

JUDGES