[Cite as *In re S.G.*, 2014-Ohio-1088.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 100441**

# IN RE: S.G.
# A Minor Child

[Appeal by S.G., Mother]

**JUDGMENT:**
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 12901811

**BEFORE:** Blackmon, J., Jones, P.J., and Kilbane, J.

**RELEASED AND JOURNALIZED:** March 20, 2014

**ATTORNEY FOR APPELLANT**

Anita Barthol Staley
7327 Center Street
Mentor, OH 44060

**ATTORNEYS FOR APPELLEE**

**For C.C.D.C.F.S.**

Timothy J. McGinty
Cuyahoga County Prosecutor

Pamela A. Hawkins
Assistant County Prosecutor
3955 Euclid Avenue
Cleveland, OH 44115

**GUARDIAN AD LITEM FOR CHILD**

Ruth A. Brady
1899 West 25th Street
Suite 203
Cleveland, OH 44113

PATRICIA ANN BLACKMON, J.:

**{¶1}** Appellant S.G. ("mother") [1] appeals the juvenile court's decision terminating her parental rights and granting permanent custody of her child to the Cuyahoga County Department of Children and Family Services ("CCDCFS" or "agency"). She raises the following assigned error:

> The trial court erred in granting the motion for permanent custody as such decision was against the manifest weight of the evidence.

**{¶2}** Having reviewed the record and pertinent law, we affirm the juvenile court's decision. The apposite facts follow.

## Facts

**{¶3}** On January 5, 2012, the mother left the child (d.o.b. February 13, 2011) at Providence House.[2] After approximately a month, Providence House had to discharge the child, but the mother was in jail for drug abuse. Therefore, CCDCFS was contacted and took emergency custody of the child on February 3, 2012. The mother then stipulated to CCDCFS obtaining temporary custody.

**{¶4}** On September 10, 2013, the agency filed a motion to modify its custody of the child from temporary to permanent custody. A hearing was conducted on September 16, 2013. The mother, her attorney, the GAL for the child, the assigned social worker,

---

[1] The mother and child have the same initials; therefore, we will refer to them as mother and child for ease of discussion.

[2] The mother has three children. Two of the children are in the legal custody of their paternal relatives. The paternity of the child that is the subject of the instant appeal has not been established.

and the prosecutor were all in attendance. The social worker, Martinique Future ("Future") was the only witness to testify.

{¶5} Future testified that the agency developed a case plan for the mother with the goal of reunification. The mother was (1) to obtain and maintain safe, stable, and appropriate housing, (2) complete a mental health assessment and follow all treatment recommendations, (3) complete a substance abuse assessment and follow all treatment recommendations, (4) secure employment, and (5) attend parenting classes.

{¶6} Upon release from jail, the mother lived with a friend, and thereafter lived at various different addresses. The agency attempted to help the mother obtain suitable housing by referring her to the EDEN housing program, and provided her with an application for EDEN. However, the mother failed to attend the intake appointment. The agency also provided her with a contact number that would inform her of various available shelters. However, in spite of these efforts, at the time of the hearing, the mother was living in her car.

{¶7} The mother was diagnosed with depression and anxiety; therefore she was referred for a mental health assessment and treatment. Initially, she became involved with Murtis Taylor Services Center. However, she was discharged from the program in April 2012 for failing to attend her appointments. Because the mother did not have health insurance, she was referred to MetroHealth Medical Center to complete a psychological evaluation. It does not appear she ever followed through with this. Once

the mother obtained insurance, she was referred back to Murtis Taylor, but failed to attend the psychological evaluation.

{¶8} The mother also failed to complete a substance abuse assessment and did not appear for random drug screens. CCDCFS included these as part of her case plan because she had tested positive for marijuana while on probation. At the time of the hearing, she had a charge pending for drug abuse.

{¶9} The mother contended she complied with the employment requirement because prior to trial she presented pay stubs showing she was working at a temporary agency. However, the pay stubs were only for two days in the month of August. The mother also presented a letter from a home remodeling company stating she was employed there; however, when the social worker called the company to verify her employment, they had never heard of the mother.

{¶10} The mother did successfully complete parenting classes. However, it was not possible to see if she benefitted from her classes due to her sporadic interaction with the child. Out of 74 possible visits, the mother only attended 17. Although she contended she missed visitations because of transportation issues, the social worker gave her two bus tickets every time she visited so that she could have transportation to the visitation center and a ticket to return home.

{¶11} The child's guardian ad litem ("GAL") also recommended that the child be committed to the permanent custody of the agency. At the time of the hearing, the child

had been with her current family for six months and was doing excellent. The foster family would also like to adopt the child.

{¶12} The trial court granted permanent custody of the child to CCDCFS based on the mother's failure to comply with the case plan by failing to receive drug or mental health assessments and treatment, failure to find stable housing, and the mother's lack of commitment to the child based on her failure to regularly visit. The court also found that the mother's lack of follow-through increased the likelihood of a recurrence of neglect, posing a risk to the child's safety. The court also noted that the GAL's report indicated that the mother only gave attention to the child when she was directed to do so because she focused most of her attention on another child in the system during visitations.

## Permanent Custody

{¶13} The mother argues that the trial court's decision to award permanent custody of the children to CCDCFS was not supported by clear and convincing evidence and was not in the best interest of the child.

{¶14} It is well established that the right to parent one's children is a fundamental right. *In re C.F.*, 113 Ohio St.3d 73, 2007-Ohio-1104, 862 N.E.2d 816, ¶ 28. Nevertheless, a government agency has broad authority to intervene when necessary for the child's welfare or in the interests of public safety. *Id.* at ¶ 28-29, citing R.C. 2151.01(A). In accordance with R.C. 2151.414, a trial court may grant permanent custody of a child to an agency if the court determines, by clear and convincing evidence, that one of the factors enumerated in R.C. 2151.414(B)(1)(a)-(d) applies and that an

award of permanent custody is in the child's best interest. *Id*. at ¶ 23. "Clear and convincing evidence" is evidence that "will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

{¶15} The factors under R.C. 2151.414(B)(1) include the following: (a) the child cannot be placed with either parent within a reasonable period of time or should not be placed with either parent; (b) the child is abandoned; (c) the child is orphaned and no relatives are able to take permanent custody of the child; or (d) the child has been in the temporary custody of one or more public or private children services agencies for 12 or more months of a consecutive 22-month period. Although only one factor is necessary, the trial court found two factors. The court found that the child had been in the temporary custody of the agency for twelve or more months of a consecutive 22-month period. The court also found that the child could not be placed with the mother within a reasonable period of time.

{¶16} R.C. 2151.414(E) sets forth the factors a trial court is to consider in determining whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents. The existence of one factor alone will support a finding that the child cannot be reunified with the parent within a reasonable time. *See In re: William S.*, 75 Ohio St.3d 95, 1996-Ohio-182, 661 N.E.2d 738.

{¶17} Here, the trial court found several factors. The court found that, 1) in spite of planning and diligent efforts by the agency to assist the mother in remedying the problems that initially caused the child to be placed outside the home, the mother has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home. R.C. 2151.414(E)(1); and, 2) the mother demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to so or by other actions showing an unwillingness to provide an adequate home for the child. R.C. 2151.414(E)(4).

{¶18} We conclude these findings were supported by clear and convincing evidence. Mother has failed to undergo assessments for drug and mental health problems. Although she did successfully complete probation, which would indicate that she passed random drug testing, as of the date of the hearing, she had another drug abuse case pending.

{¶19} The mother has failed to utilize the services recommended by the social worker to obtain stable housing and currently lives in her car. She has also only attended 17 out of 74 visitations with her child. From May 2012 until January 2013, the mom failed to visit with the child in spite of being provided bus passes by the agency to aid in her transportation needs to the visitation center. When more than 90 days has elapsed, as was the case herein, parents are considered to have abandoned their children pursuant to R.C. 2151.011(C). Even when she did visit with the child, she had to be directed to pay

attention to that particular child, or she would dote on another child of hers that was there for visitation.

**{¶20}** Although the mother did obtain a job through a temporary agency, she submitted pay stubs for only two days of work in an entire month, indicating the job is not sufficient to support her child. She did contend she worked at a home remodeling company; however, calls to the company to confirm her employment there indicated that she was not an employee.

**{¶21}** Having satisfied R.C. 2151.414(B)(1), the only other finding the court was required to make was that an award of permanent custody was in the best interest of the child. *See In re D.A.*, 8th Dist. Cuyahoga No. 95188, 2010-Ohio-5618. R.C. 2151.414(D)(1) sets forth the relevant factors a court must consider in determining the best interest of the child. These factors include, but are not limited to the following: (a) the child's interaction and interrelationship with the child's parents, siblings, relatives, and foster care givers; (b) the child's wishes expressed directly or through a GAL; (c) the child's custodial history, (d) the child's need for legally secure permanent placement and if that type of placement can be obtained without granting permanent custody to the agency, and (e) whether any factors listed in R.C. 2151.414(E)(7)-(11) apply.

**{¶22}** The mother's lack of interaction with the child supports the trial court's conclusion that permanent custody to the agency was in the child's best interest. As we set forth above, the mother's visitations with the child were inconsistent; she went as long as eight months without visiting the child.

**{¶23}** The GAL also recommended permanent custody of the child to the agency. The child is thriving in her foster home where she had lived for the last six months. The foster family also has a desire to adopt the child, which would provide her with the stability she needs. The foster family and the paternal grandmother of the child's half-sister also have a good relationship. They have worked together to make sure the children get together whenever the sibling is visiting from out of state. Over the summer, the children visited six times. Therefore, the child will continue to have a bond with her sibling.

**{¶24}** Based on the evidence presented, we conclude that clear and convincing evidence supports the trial court's determination that the child could not be reunited with the mother within a reasonable time, and the trial court did not err in concluding that granting permanent custody of the child to CCDCFS was in the best interest of the child. Accordingly, the mother's sole assigned error is overruled.

**{¶25}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
PATRICIA ANN BLACKMON,   JUDGE

LARRY A. JONES, SR., P.J., and
MARY EILEEN KILBANE, J., CONCUR