[Cite as *In re C.J.*, 2014-Ohio-2403.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**Nos. 100532 and 100534**

# IN RE: C.J.

# A Minor Child

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Juvenile Division
Case No. AD 11900672

**BEFORE:** Rocco, J., Celebrezze, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** June 5, 2014

-i-

**ATTORNEY FOR FATHER**

Betty C. Farley
17316 Dorchester Drive
Cleveland, OH 44119

**ATTORNEY FOR MOTHER**

George Coghill
10211 Lakeshore Blvd.
Cleveland, OH   44108

**ATTORNEYS FOR APPELLEE, STATE OF OHIO**

Timothy J. McGinty
Cuyahoga County Prosecutor

BY:
Rachel V. Eisenberg
Assistant Prosecuting Attorney
3955 Euclid Avenue
Cleveland, OH 44115

Jennifer McPaul
Assistant Prosecuting Attorney
C.C.D.C.F.S.
8111 Quincy Avenue
Cleveland, OH   44104

**ATTORNEY FOR CHILD**

Suzanne Piccoreli
255 Falmouth Drive
Rocky River, OH 44116

**GUARDIAN AD LITEM FOR CHILD**

Carla L. Golubovic
P.O. Box 29127
Parma, OH   44129

KENNETH A. ROCCO, J.:

{¶1} In these consolidated appeals, appellants N.J. and T.W., respectively, natural father and natural mother of the subject child, each challenge the decision of the Cuyahoga County Court of Common Pleas, Juvenile Division, to terminate his or her parental rights and to grant permanent custody of their minor child to the Cuyahoga County Department of Children and Family Services ("the agency").

{¶2} Father presents three assignments of error. He claims that the juvenile court's decision should be reversed because the evidence presented did not demonstrate that permanent custody was in the child's best interest. Father further claims that the award should be reversed for both the agency's failure to determine that the child could be placed with her paternal aunt and the juvenile court's failure to grant legal custody of the child to her paternal aunt.

{¶3} Mother presents two assignments of error. Like Father, she claims that the juvenile court's decision is unsupported by the evidence in the record. Mother additionally claims that the juvenile court abused its discretion in admitting certain evidence at trial because it constituted hearsay.

{¶4} Upon a review of the record, this court finds that none of appellants' claims have merit. Consequently, the juvenile court's order is affirmed.

{¶5} Mother gave birth to the child on January 22, 2005. The agency obtained emergency custody of the child when she was five years old, and eventually placed the

child in the same foster home as her older female sibling. Subsequently, the child's sister was placed into a separate foster home.

{¶6} On January 12, 2011, the agency filed a complaint in juvenile court seeking temporary custody of the child. As amended, the complaint stated that the child was dependent, the family had an "extensive history" with the agency, two older half-siblings had mental health and behavioral problems, and Father neither visited nor supported the child.

{¶7} On April 29, 2011, the matter proceeded to a hearing. Mother admitted the allegations of the amended complaint. At the conclusion of the hearing, the juvenile court granted the agency's motion and placed the child in the agency's temporary custody. The court found that Mother was "to be involved in mental health evaluation and services for child and for self." The court also found that each parent "need[ed] stable housing." The court approved the agency's case plan.

{¶8} The agency thereafter applied to the juvenile court for an extension of the child's temporary custody; the juvenile court granted the extension. On September 10, 2012, the agency filed a motion to modify temporary custody to permanent custody. The agency asserted that the child had been in temporary custody for over 12 months of a consecutive 22 month period, as set forth in R.C. 2151.414(B)(1)(d).

{¶9} Attached to the agency's motion was the affidavit of Joyce Freeman, the social worker of record for the case. Freeman averred that: (1) the case plan required mother to "obtain emotional stability" and "appropriate parenting skills," but that Mother

was not in compliance, having been charged in Euclid Municipal Court with child endangering, (2) Mother failed on a consistent basis to appear at her time of private visitation with the child, (3) Mother had failed to obtain an updated mental health assessment and her "last assessments were obtained in 2008, wherein a history of schizophrenia was referenced along with a diagnosis of personality disorder," (4) none of Mother's four children was in her care and custody, and (5) Father was "a registered sex offender with a conviction [for] Felony Gross Sexual Imposition from Cuyahoga County in 2006."

{¶10} While the agency's motion was pending, the juvenile court conducted several pretrial hearings. On March 19, 2013, Father filed a motion requesting that the court grant him "or in the alternative a relative * * * to be name[d] later, legal custody of the child." In his supporting memorandum, Father asserted that he "will have substantially complied and/or completed the case plan by time of trial" and that he had "the ability to care for and support the child."

{¶11} On May 10, 2013, Father amended his motion for legal custody to name his sister Luretha Talbert as the "alternate" relative. Father asserted in his memorandum in support of his amended motion that Talbert had complied with the child's guardian ad litem's ("GAL") and with the agency's "custody investigation[s] and addressed any alleged concerns."

**{¶12}** On May 28, 2013, Talbert filed a "statement of understanding for legal custody" pursuant to R.C. 2151.353(A) and R.C. 2151.42. Her signature had no attached attestation.

**{¶13}** On August 29, 2013, the juvenile court called the matter for trial. Neither Father nor paternal aunt attended. The agency presented the testimony of the two social workers who had been assigned to the child's case. Mother also testified.

**{¶14}** On September 17, 2013, the juvenile court issued a judgment entry that granted the agency's motion for permanent custody of the child. Both Father and Mother have appealed from that judgment.

**{¶15}** In App. No. 100532, Father presents three assignments of error as follows.

> I. The Cuyahoga County Department of Children and Family Services failed to show by clear and convincing evidence that permanent custody is in the minor child's best interest.

II. The Cuyahoga County Department of Children and Family Services failed to comply with Ohio Revised Code § 2151.412(G) in that the child was not placed in the legal custody of a suitable family member.

III. The trial court's failure to grant appellant's motion for legal custody of the child to a relative was not based on a preponderance of the evidence and therefore constitutes an abuse of discretion.

**{¶16}** In App. No. 100534, Mother presents the following two assignments of error.

I.   The trial court's decision to award permanent custody to CCDCFS was against the manifest weight of the evidence as it was not supported by clear and convincing evidence.

II.   The trial court abused its discretion by erroneously admitting prejudicial hearsay testimony.

**{¶17}** Both Father and Mother argue in their first assignments of error that the juvenile court's decision is unsupported in the record.   This court disagrees.

**{¶18}** In order to terminate parental rights and grant permanent custody to a county agency, the record must demonstrate by clear and convincing evidence the following: (1) the existence of one of the conditions set forth in R.C. 2151.414(B)(1)(a) through (d); and, (2) permanent custody is in the best interest of the child.  *In re: S.H.*, 8th Dist. Cuyahoga Nos. 97992, 97993, and 97994, 2012-Ohio-4064, ¶ 27.   "Clear and convincing evidence" is that quantum of evidence that instills in the trier of fact a firm belief or conviction as to the allegations sought to be established.  *In re Y.V.*, 8th Dist. Cuyahoga No. 96061, 2011-Ohio-2409, ¶ 13, citing *Cross v. Ledford*, 161 Ohio St. 469, 477, 120 N.E.2d 118 (1954).

**{¶19}** In determining the child's best interest, the relevant factors include the following: (1) the interaction and interrelationship of the child with others; (2) the wishes of the child; (3) the custodial history of the child; (4) the child's need for a legally secure placement and whether such a placement can be achieved without permanent custody; and, (5) whether any of the factors in divisions (E)(7) to (11) apply.   The "best interest

determination" focuses on the child, not the parent. R.C. 2151.414(C); *In re Awkal*, 95 Ohio App.3d 309, 315, 642 N.E.2d 424 (8th Dist.1994). The discretion that the juvenile court enjoys in deciding whether an order of permanent custody is in the best interest of a child should be accorded the utmost respect, given the nature of the proceeding and the impact the court's decision will have on the lives of the parties concerned. *Id.* at 316.

{¶20} In this case, the record demonstrated pursuant to R.C. 2151.414(B)(1)(d) that the child had "been in the temporary custody of a public children services agency * * * for twelve or more months of a consecutive twenty-two month period." Neither Father nor Mother can dispute that this requirement was met. The existence of that one factor alone can support a finding that the agency should be granted permanent custody of the child. *In re S.G.*, 8th Dist. Cuyahoga No. 100441, 2014-Ohio-1088, ¶ 16, citing *In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996).

{¶21} In addition, R.C. 2151.414(D)(2) provides:

> If *all* of the following apply, permanent custody is in the best interest of the child and the court *shall* commit the child to the permanent custody of a public children services agency or private child placing agency:
>
> (a) The court determines by clear and convincing evidence that *one or more of the factors in division (E) of this section exist* and the child cannot be placed with one of the child's parents within a reasonable time or should not be placed with either parent.

(b) The child has been in an agency's custody for two years or longer, and *no longer qualifies for temporary custody* pursuant to division (D) of section 2151.415 of the Revised Code.

(c) The child does *not* meet the requirements for a planned permanent living arrangement pursuant to division (A)(5) of section 2151.353 of the Revised Code.

(d) Prior to the dispositional hearing, no relative or other interested person has filed, or has been identified in, a motion for legal custody of the child.

(Emphasis added.)

{¶22} Putting aside the foregoing subsection (D)(2)(d) for purposes of the discussion of Father's and Mother's first assignments of error, R.C. 2151.414(E) provides:

(E) In determining at a hearing * * * whether a child cannot be placed with either parent within a reasonable period of time or should not be placed with the parents, the court *shall* consider *all relevant evidence*. If the court determines, by clear and convincing evidence * * * that *one or more* of the following exist as to each of the child's parents, the court *shall* enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent * * * .

{¶23} In this case, the juvenile court determined not one, but four, subsections of R.C. 2151.414(E) applied, viz., (1), (2), (4) and (11). The court determined that (1) in spite of planning and

diligent efforts by the agency to assist the parents in remedying the problems that initially caused the child to be placed outside the home, the parents had failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the home, (2) Mother displayed a chronic mental or emotional illness so severe that it made her unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the trial; (4) the parents demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to so or by other actions showing an unwillingness to provide an adequate home for the child, and (11) Mother had her parental rights involuntarily terminated with respect to a sibling of the child and had failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, Mother could provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶24} The juvenile court also found that the child's best interest was served by granting permanent custody to the agency. The juvenile court's determinations and findings were supported by clear and convincing evidence.

{¶25} As to Father, the record reflects that Father did not take any interest in the child until late 2012. He never called the agency to inquire about the child's welfare. Moreover, he did not appear for his first supervised visit with the child, and could not interact with the child at his next visit because the child refused to come near him.

{¶26} The record also reflects that, in the face of the child's active aversion to him, Father responded inappropriately; he told child to stop being afraid of him because she was coming to live with him, which prompted only more fear in the child. Father did not

come to any visits with the child from February 2013 until June 2013. Father did not have his own home; rather, he lived in his sister's home. Father also had no verifiable employment. Finally, Father did not find it necessary to attend the trial on the agency's motion for permanent custody.

{¶27} As to Mother, the record reflects that Mother failed to undergo qualified assessments of her mental and emotional health, although she had been diagnosed in 2008 and 2010 with paranoid schizophrenia and a personality disorder. One social worker testified that she was removed from the case because Mother had threatened her with physical harm. Mother's testimony at trial was disjointed and bizarre.

{¶28} The record also reflects that Mother was convicted of child endangering in 2012, Mother failed to utilize the services recommended by the social workers, and, at the visitations with the child, she was chronically late and remained unfocused on the child. Mother's three older children had been permanently removed from her custody. Mother's claims that she could support the child because she had outside employment were never substantiated. The child did not seem to have any affection for Mother; indeed, Mother admitted that the child was usually "angry" during Mother's visits.

{¶29} The child's GAL recommended that the agency's motion be granted. The record supports a conclusion that, in light of the child's lack of a bond with either her Father or her Mother and the child's own psychological and emotional problems, the child had an urgent need for a legally secure placement.

**{¶30}** Based on the record, clear and convincing evidence supports the juvenile court's decision that granting permanent custody of the child to the agency was in her best interest. Father's and Mother's first assignments of error, accordingly, are overruled.

**{¶31}** Father asserts in his second and third assignments of error that neither the agency nor the juvenile court complied with its statutory duties under R.C. 2151.412(G) and R.C. 2151.353(A) to ensure that the child was placed in the legal custody of a relative. According to Father, his sister Luretha Talbert was a relative who was able to appropriately provide for the child. Father misreads the statutes.

**{¶32}** R.C. 2151.412(G) governs case plans, not custody determinations. *In re M.W*, 8th Dist. Cuyahoga No. 96817, 2011-Ohio-6444, ¶ 26. While the statute provides that, in developing a case plan, the agency should *consider* that if parents are not suitable custodians for their children then extended family members are next in priority, the statute's provisions are not mandatory. *Id.*, citing *In re Rollinson*, 5th Dist. Stark Nos. 97CA00243 and 97CA00206, 1998 Ohio App. LEXIS 1984 (Apr. 27, 1998). The statute provides in relevant part, moreover, that "[i]n the agency's development of a case plan and the court's review of the case plan, the child's health and safety shall be the paramount concern." Thus, other than parents, no preference exists for family members in custody awards. *In re M.W.* at ¶ 27.

**{¶33}** Similarly R.C. 2151.353(A)(3) provides that a juvenile court "may" make an order of disposition to

any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child or is identified as a proposed legal custodian in a * * * motion filed prior to the dispositional hearing by any party to the proceedings. * * *

{¶34} In this case, the record reflects that the agency considered Talbert as a possible placement alternative for the child. Upon investigation, however, the social worker found that Talbert had been less than honest about her background; although Talbert denied having any history of substance abuse, she had been charged with drug trafficking. Talbert visited with the child only once, never called the agency to inquire about the child's welfare, and did not consider Father's sexual offense conviction to be of any concern. Like her brother, Talbert did not find it necessary to appear at the trial of this case.

{¶35} Under these circumstances, neither the agency nor the court was required to give preferential consideration to Father's suggestion that Talbert be granted legal custody of the child. *In re P.T.*, 5th Dist. Tuscarawas No. 2012 AP 02 0009, 2012-Ohio-4034. Father's second and third assignments of error, therefore, are also overruled.

{¶36} Mother argues in her second assignment of error that the juvenile court acted improperly in overruling her objections to the social workers' testimony about Mother's psychiatric history; the social workers testified that Mother had been diagnosed with schizophrenia and a personality disorder. Mother asserts the testimony was

inadmissible hearsay. Upon a review of the record, however, this court cannot find the juvenile court erred.

**{¶37}** The rules of evidence apply to dispositional proceedings pursuant to R.C. 2151.35(I). Nevertheless, a trial court has broad discretion in admitting or excluding evidence, and absent an abuse of discretion and a showing of material prejudice, a trial court's ruling on the admissibility of evidence will be upheld. *In re J.T.*, 8th Dist. Cuyahoga Nos. 93240 and 93241, 2009-Ohio-6224, ¶ 67, citing *State v. Martin*, 19 Ohio St.3d 122, 129, 483 N.E.2d 1157 (1985).

**{¶38}** The juvenile court judge is presumed to be able to disregard improper testimony. *In re J.T.* at ¶ 70. The admission of hearsay evidence in termination of parental rights cases, therefore, even if error, is not considered prejudicial unless it is shown that the judge relied on improper evidence in making his decision. *Id.*, citing *In re Lucas,* 29 Ohio App.3d 165, 504 N.E.2d 472 (3d Dist.1985).

**{¶39}** In this case, the evidence Mother challenges was already properly a part of the record. The case plan filed with the juvenile court indicated that a court-ordered psychological test in 2010 "revealed that [Mother] is an individual who possibly meets the criteria for having paranoid schizophrenia." Thus, Mother's mental status had already been documented. *In re J.T.* at ¶ 71.

**{¶40}** The social workers' testimony, therefore, was designed to report Mother's obligations under the case plan that they oversaw and whether there was compliance. *Id.* In order to be "current," Mother was required to undergo another psychological

assessment within two years of the institution of the case plan, but she failed to obtain an approved assessment.

**{¶41}** The record in this case does not establish that either the juvenile court erred in allowing the social workers' testimony about Mother's previous diagnosis or that the juvenile court relied upon hearsay in determining that a grant of permanent custody to the agency was in the child's best interest. *Id.* at ¶ 71-72. Consequently, Mother's second assignment of error is overruled.

**{¶42}** The juvenile court's judgment is affirmed.

It is ordered that appellee recover from appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
KENNETH A. ROCCO, JUDGE

FRANK D. CELEBREZZE, JR., P.J., and
EILEEN T. GALLAGHER, J., CONCUR